John McNEIL, Appellant,

v.

UNITED STATES, Appellee.

No. 81–175.

District of Columbia Court of Appeals.

Argued Jan. 19, 1983.

Decided Aug. 2, 1983.

---

Jerry Lee Dier, Clarksville, Md., appointed by this court, for appellant.

Donald J. Allison, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, Barry M. Tapp, and Alan D. Strasser, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

NEWMAN, Chief Judge:

Appellant alleges several instances of prosecutorial misconduct which he contends mandate reversal of his conviction. They are: the failure to correct the false testimony of a witness; the introduction of evidence of appellant's other crimes before appellant took the stand; and comments in closing argument without evidentiary foundation. He further contends reversible error in the court's curtailing cross-examination of Ms. Brown. We find that while there was error in each of these areas, the error was harmless. Thus, we affirm.

I.

Roberto Joseph, an employee of the Zodiac record shop in Northwest Washington, testified that on May 11, 1980, at approximately 7:45 p.m., a person he later identified as appellant's codefendant, Jerome Cox, entered the store and, after briefly looking at some merchandise, walked out again. Cox re-entered the store a short time later and indicated to Joseph that he wished to purchase a radio. As Joseph started to assist him, Cox produced a gun and demanded the store's receipts. Joseph complied, and Cox ran out of the store with the radio and approximately three hundred dollars in cash.

Detectives Ronald Carpenter and Jack Klepfel responded to the store shortly after the robbery. Carpenter testified that their investigation revealed that Cox had fled the scene in an automobile listed to Taundra Brown. Carpenter and Klepfel went to 304 Upshur Street, N.W., the address where Brown was listed as residing, and after a wait, observed the car for which they were looking pull into the block and park. The detectives advised Brown, who was driving the car, and appellant, the other occupant, that the car had been used in an armed robbery several hours before, and arrested them. The police recovered fifty-one dollars from a search of appellant's person and seventy-five dollars from the glove compartment of Brown's car. At the time of their arrest both Brown and appellant told the police that earlier that evening they had driven Cox to the Safeway on Columbia Road, N.W., across the street from the Zodiac record shop, but that they stayed in the car while Cox went inside the Safeway. Cox returned to the car carrying a box containing what appeared to be groceries, and they drove him to Southeast Washington. They denied knowing anything about the robbery.

Brown subsequently admitted her and appellant's involvement in the robbery, pled guilty to attempted robbery, D.C.Code § 22–2902 (1981), and testified against appellant at trial. Brown testified that she, appellant, and Cox left appellant's house in the afternoon of May 11, 1980, to get some money and drugs. They drove, in Brown's car, through Rock Creek Park while deciding where they were going to get the money. Appellant, who was driving, suggested that they rob the Zodiac record shop, but

told Cox that Cox would have to do the robbery because the owner of the store knew appellant. Both Cox and appellant had handguns in their possession.

They drove by the record store and parked in the Safeway lot, after which Cox went inside the record store to check it out. A short time later Cox came back out, gave a prearranged signal, and went back inside. Cox came out again carrying a radio, and he and Brown, who had gotten out of the car to see what was taking Cox so long, climbed in the car. Appellant drove off. After splitting the money, appellant drove Cox to Southeast Washington. Appellant and Brown then drove to Brown's house where they were arrested.

During cross-examination Brown falsely denied that she had been advised that the prosecutor would argue for her to remain at Second Genesis, a drug rehabilitation program, in exchange for her testimony against the appellant. The government made no attempt to correct this falsity. Appellant's counsel sought and was denied leave of the court to approach the bench so he could request that a transcript of Brown's plea be prepared. At the conclusion of the government's case, appellant's counsel again expressed to the court his concern that Brown had misstated the terms of her plea agreement and requested, without objection, that the reporter be permitted to read to the jury the terms of Brown's plea bargain from her notes. The court, relying on its own recollection of the statements made at the plea proceeding, denied appellant's request. Appellant was found guilty and sentenced on January 13, 1981, to 15–45 years.

## II.

■ This case presents several instances of trial court error. While these errors were harmless in the context of this case, because they could not substantially sway the judgment of the jury, *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), they should be illuminated. The first error was the prosecutor's failure to correct Ms. Brown's misstatement of her plea agreement. The duty of the prosecutor to correct false testimony has long been recognized by the Supreme Court:

> As long ago as *Mooney v. Holohan,* 294 U.S. 103, 112 [55 S.Ct. 340, 342, 79 L.Ed. 791] (1935) [the Supreme] Court has made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice" . . . . In *Napue v. Illinois,* 360 U.S. 264, 269 [79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217] (1959) we said "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Thereafter, *Brady v. Maryland,* 373 U.S. 83, 87 [83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963)] held that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution."

*Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1971). In *Giglio,* the duty to correct false testimony was expressly applied to mischaracterizations of plea bargains. Consequently, when Ms. Brown denied that the government had agreed not to oppose her request to remain in Second Genesis in return for her testimony, the prosecutor should have exposed this falsehood.

*Giglio, supra,* holds that reversal may be the appropriate sanction for a failure to disclose false testimony. However, "we do not . . . automatically require a new trial whenever a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . a finding of materiality . . . is required." *Id.* at 154, 92 S.Ct. at 766 (citations omitted). The suggested test is whether "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Id.* Application of this test to the facts of this case demonstrates that the error was harmless.

■ The jury was aware that Brown was a convicted criminal and a heroin addict. It knew that she had sworn to a false statement to the police and lied to her family, friends, and attorney. More importantly, her motive for testifying against appellant was exhaustingly explored. The jury was aware that she had changed her mind at the last minute when things looked badly for her; that she had several criminal convictions for which she was awaiting sentence or probation revocation, and that she hoped things would go better for her in these matters if she testified against appellant at his trial. It also knew that the government had made significant concessions in exchange for her testimony, agreeing to dismiss a more serious offense and waiving its right to seek her incarceration pending sentencing on her plea of guilty to attempted robbery. Moreover, the jury was informed by the prosecutor during closing argument that the government believed Brown belonged in Second Genesis and not in jail, and it was thus aware that the government intended to be lenient towards her. In spite of all this evidence the jury chose to believe Brown. There is no reasonable likelihood that the jurors would have changed their minds as to her credibility on the basis of the additional knowledge that Brown had been promised that the government would not seek her incarceration on this additional charge (for which she could have received up to three years) when they knew she faced seventy-five years on other charges for which she had received no such promise.

### III.

■ Appellant contends his sixth amendment rights were violated when the trial court improperly curtailed his attempt to impeach Brown concerning her plea bargain. The sixth amendment guarantees to a defendant in a criminal prosecution the right "to be confronted with the witnesses against him" and that that right encompasses the opportunity to cross-examine those witnesses, particularly with respect to any potential bias or ulterior motive for

testifying. *Springer v. United States,* 388 A.2d 846, 854–55 (D.C.1977). However, reversal of a conviction is not warranted every time a trial court limits such inquiry during cross-examination. Where the trial court limits a specific inquiry into an admittedly material subject relevant to a witness' bias or motive for testifying, but generally permits extensive cross-examination on the issue, this court will not reverse if the error in excluding the relevant inquiry was harmless beyond a reasonable doubt. *Springer v. United States, supra,* 388 A.2d at 856, citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

In this case, the trial court permitted appellant to cross-examine Brown extensively with respect to her credibility in general as well as in regard to any specific bias or motive for her testimony against him. Initially appellant's counsel attempted to show that Brown was testifying only because she had discovered, when provided with the grand jury testimony of the government witnesses on the morning of the trial, that the government's case against her was stronger than she had believed, and that therefore she "had no other choice". Counsel then turned to a general attack on Brown's credibility, reviewing for the jury her prior convictions, her probationary status, and charges for which she was then pending sentence. Next appellant reviewed with Brown the concessions she was getting from the government in exchange for her testimony. He established that she was being allowed to plead to attempted robbery instead of armed robbery, that the government would not object to her remaining on her personal recognizance, and that she hoped things would go easy for her. It was only at this juncture that she denied the fact of the prosecutor's promise not to oppose Second Genesis. Appellant's counsel then resumed his attack on Brown's credibility by having her acknowledge that she had lied in her sworn statement to the police on the day of her arrest,

indeed, that she had lied about the robbery to everyone—her family, friends, and attorney—and that prior to the day of trial she had told no one the version of the events she relayed to the jury. Appellant concluded his cross-examination by generally casting Brown's character in a bad light, pointing out that by assisting the police to arrest Jerome Cox she not only enticed Cox to the location of the arrest with the promise of splitting some heroin, but sought to postpone the arrest until after she had used the heroin herself.

■ In *Springer, supra,* we held that this court will not reverse a conviction if it is clear beyond a reasonable doubt either "(1) that the defendant would have been convicted without the witness' testimony *or* (2) that the restricted line of inquiry would not have weakened the impact of the witness' testimony." Appellant's cross-examination of Brown placed before the jury sufficient information from which to infer that she was motivated to testify against appellant by a belief that if she did so things might go better for her in her own criminal cases. Consequently, the trial court's error in refusing to allow appellant to show that, in fact, the government had agreed not to oppose continuation in Second Genesis was harmless and does not warrant reversal.

### IV.

■ At several points during the direct examination of Taundra Brown the government elicited testimony concerning, or asked questions implying appellant's involvement in other criminal activities. In addition, several questions concerning Ms. Brown's own criminal activities were phrased in such a way as to suggest appellant's participation in these crimes.[1] Such questions violated the long-standing principle that evidence of past crimes is inadmis-

sible to suggest a general criminal disposition. *Drew v. United States,* 118 U.S.App. D.C. 11, 15, 331 F.2d 85, 89 (1964). However, appellant was not prejudiced by Brown's testimony insomuch as he elected to testify. *Lewis v. United States,* 379 A.2d 1168 (D.C.1977). The bulk of the erroneously admitted testimony, which inferred previous crimes by appellant was admissible on cross-examination with respect to his previous record, and indeed, was so elicited. We reject appellant's contention that the erroneously admitted evidence compelled him to take the stand as without support in the record. Thus, the improperly conducted direct examination by the government was harmless. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

### V.

■ The final instance of prosecutorial misconduct occurred during summation. The prosecutor stated that appellant was the one who informed authorities that Taundra Brown brought drugs to Lorton, resulting in her indictment for possession of heroin. This comment was without relevance or materiality to the issues at trial and was offered without evidentiary foundation. However, applying the test of *Kotteakos,* we find this error harmless.

*Affirmed.*

MACK, Associate Judge, dissenting:

I do not agree that the errors complained of were harmless.

At trial the central issue was the credibility of an alleged accomplice who (having entered a plea of guilty on the day of trial) was the single government witness to link appellant to the commission of the armed robbery. In context, the issue in this court is not whether the jury knew of the transgressions of this witness. The issue, rather,

---

1. The prosecutor asked:
   Now, Ms. Brown, tell the Court whether or not—without mentioning anybody else's name, any other partner's name, were you convicted in the District of Columbia this year of possession of implements of crime?

   and began asking,
   Ma'am, I just have one other question: The cases you indicated that you were pending charges on in Maryland, and the one you pled guilty to in Virginia, without naming the person, was somebody—

is whether the government, in knowingly permitting false testimony by this witness to go unchallenged, and in affirmatively using this false testimony to persuade the jury,[1] has improperly bolstered her credibility so as to create imbalance and a denial of due process. *See United States v. Iverson,* 205 U.S.App.D.C. 253, 637 F.2d 799 (1980), *reh'g denied,* 208 U.S.App.D.C. 364, 648 F.2d 737 (1981) (per curiam). In my view, the record confirms that this issue must be answered affirmatively.

I respectfully dissent.

1. On cross-examination, appellant's attorney questioned Taundra Brown as follows:

Q. Did anyone indicate to you any assistance to keep you in Second Genesis rather than you having to face any time in jail?
A. No.
Q. Isn't it true that at the time of the entry of your plea of guilty to attempted robbery this morning, your counsel indicated that the Government might favorably talk in your behalf at the time of sentencing? Do you remember your counsel saying anything like that?
A. No. She told me that—to tell her the truth about what happened, and that she felt as though—and I think so, too—that if I just go ahead and be truthful about it, things might work out better for me.
Q. Do you recall the prosecutor, Mr. Tapp, indicating that he would not oppose Second Genesis for you? Did he say anything like that?
A. No, he didn't.

The trial court, relying on its own mistaken recollection, curtailed impeachment on this issue. While government counsel had agreed with appellant's attorney that a review of the reporter's notes on the plea bargain would clear up the matter, the prosecutor did nothing further to correct the court's memory. In fact, in closing argument the prosecutor argued that Brown "was not getting any real concessions ... not getting anything from ... what she's facing before this Court." and the prosecutor further stated that:

She has not gotten concessions for anything. The only thing she was promised—she told you one thing she was promised was that she would not be stepped back, which means that at the time when she pled guilty, she would not have to go back there in the cellblock. That's all. She would be able to stay out on bond pending sentencing. She said that was the only promise she got, and there was no testimony from anybody else that she had gotten anything else other than that.

She said that—there was some allusion the attorney may have said that she would ask, at the time of sentencing, whether she could stay in Second Genesis, and she said the only promise she got was that she would be able to plead guilty and testify truthfully in this case, testify truthfully.

On appeal, the government concedes that during Brown's plea proceedings on the day of appellant's trial, her counsel represented that a part of the agreement was that the government would allocute favorably for Second Genesis treatment on Brown's behalf. At this time the government counsel (who prosecuted appellant) was present and remained silent. The government further states "we acknowledge that Miss Brown [at appellant's trial] inaccurately stated the nature of the Government's agreement with her" but argues that any error was harmless.