**Donnell PERKINS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Bernard IRVING, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 82–1570, 82–1682.

District of Columbia Court of Appeals.

Argued Jan. 17, 1984.

Decided March 1, 1984.

Michael S. Frisch, Washington, D.C., appointed by the court, for appellant Perkins.

James W. Richmond, Jr., Washington, D.C., appointed by the court, for appellant Irving.

John M. Facciola, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W. Farrell, Thomas J. Tourish, Jr., and Harold L. Cushenberry, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

Appellants, Perkins and Irving, were tried on an indictment charging each of them with three counts of armed robbery, D.C.Code §§ 22–2901, -3202 (1981), two counts of attempted robbery while armed, D.C.Code §§ 22–2902, -3202 (1981), and one count of first degree felony murder while armed, D.C.Code §§ 22–2401, -3202 (1981). In addition, appellant Irving was charged with one count of carrying a pistol without a license, D.C.Code §§ 22–3204 (1981). These charges were attributable to three related incidents, all of which occurred on the night of January 28, 1981: (1) the armed robbery of two men at Birney Place; (2) the robbery of one man and the attempted robbery of a second, both at gunpoint, in a parking lot on Stanton Road; and (3) the attempted robbery and murder of Gaddy Little, also in the Stanton Road parking lot.

After trial, a jury convicted each appellant of three counts of armed robbery and one count of attempted robbery while armed. Appellant Irving also was convicted of carrying a pistol without a license. The jury, however, was unable to reach a unanimous verdict with respect to the attempted robbery and murder of Gaddy Little. The trial judge declared a mistrial as to these two counts.

Each appellant challenges his convictions on speedy trial grounds. Each also claims that the trial judge erred in allowing the jury poll to continue on the first four counts after the tenth juror had registered dissent from the verdict on the fifth count, and in permitting the jury to resume deliberations on the fifth, sixth, and seventh counts. Finally, appellant Perkins argues that there was insufficient evidence to support his con-

victions for the Stanton Road robberies.[1] We affirm.

I. Speedy Trial

Appellants Irving and Perkins were arrested on January 29 and May 26, 1981, respectively. They were indicted on October 29, 1981, on charges stemming from the Birney Place robberies, and trial was scheduled for April 12, 1982, the earliest available date. Although all parties announced ready for trial on April 12, the court decided to continue the trial because of alleged death threats to certain defense witnesses. On May 19, 1982, the government filed a superseding indictment charging appellants with both the Birney Place and the Stanton Road crimes; a new trial date was set for July 6, 1982. After several additional continuances, granted to accommodate the schedule of the trial judge and the medical and family problems encountered by government witnesses, appellants' cases were reached for trial on September 21, 1982. The jury returned its verdicts on September 27, 1982.

On March 24, 1982, appellant Irving had filed a motion to dismiss the indictment for lack of a speedy trial. Perkins filed a similar motion on May 17, 1982. After a hearing on June 16, 1982, Judge Ugast denied these motions, setting forth extensive findings to support his decision. Because Judge Ugast's decision was issued three months before appellants' cases came to trial—and the motions were not renewed or ruled upon after trial—we cannot simply review that decision to determine whether it is supported by the evidence. *See Day v. United States,* 390 A.2d 957, 971 (D.C.1978). Rather, we must reevaluate appellant's arguments, giving consideration to the full extent of the pretrial delay.[2] However, because the trial court has "the most useful perspective" on issues relevant to a speedy trial motion, *Reid v. United States,* 402 A.2d 835, 837 (D.C.1979), we will defer to Judge Ugast's findings where those findings are relevant to our inquiry and supported by the evidence.

In determining whether an accused has been denied a speedy trial in violation of his Sixth Amendment right, we must consider four factors: (1) the length of the delay; (2) the reasons for delay; (3) defendant's assertion of the right; and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

The length of the delay between appellants' arrests and trial was twenty months for Irving and sixteen months for Perkins. In this jurisdiction, a delay of more than a year gives prima facie merit to a speedy trial claim. *Branch v. United States,* 372 A.2d 998, 1000 (D.C.1977). After such a delay, the burden is on the government to show that the delay has not prejudiced the accused. *United States v. Bolden,* 381 A.2d 624, 627 (D.C.1977). The significance of the delay here is mitigated to some extent by the fact that appellants were tried for serious felonies arising from three separate incidents. *Head v. United States,* 451 A.2d 615, 620 (D.C.1982).

As to the reasons for delay, there is no evidence that the government purposefully caused the delay between the arrests and the first trial date, and we attribute this period to court congestion. *Coles v. United States,* 452 A.2d 1190, 1192 (D.C.1982). Such a "neutral" delay, *Barker, supra,* 407

1. Two additional arguments on appeal may be disposed of without discussion. Appellant Perkins contends that the prosecutor improperly made use of a government witness' prior consistent out-of-court statement. No objection was registered by either defense attorney at trial. We conclude that the use of this statement did not amount to plain error. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc). We also conclude that appellant Irving's contention that there was improper communication between one of the witnesses for Perkins and a juror, amounting to "jury tampering" and requiring a mistrial, has no merit.

2. The facts material to this issue are sufficiently clear to preclude the need for further development by the trial court.

U.S. at 531, 92 S.Ct. at 2192, is counted against the government, but not heavily. *United States v. Perkins*, 374 A.2d 882, 883 (D.C.1977). Judge Ugast found that the two months between the original trial date and the hearing on appellants' speedy trial motions were both chargeable against the government, one month being "directly attributable" and the other "not count[ing] heavily." We perceive no error in these findings. Finally, we conclude that the three month period between the hearing and trial should be divided as follows: three weeks "directly" to the government (June 16-July 7, delay due to issuance of superseding indictment), and ten weeks to the government, but not heavily (July 7-September 21, "neutral" delay due to unavailability of trial judge and important government witnesses). *Coles, supra*, 452 A.2d at 1192; *United States v. Calloway*, 164 U.S. App.D.C. 204, 209, 505 F.2d 311, 316 (1974).

To summarize with respect to the first two factors: the government is charged with the entire pretrial delay of sixteen months for Perkins and twenty months for Irving. Only seven weeks of this time, however, is attributed directly to the prosecution. The rest is treated as institutional delay that is not weighed heavily. There is no evidence that the government at any time purposefully fostered delay in order to gain tactical advantage.

As to the last two factors, appellants did not file their speedy trial motions (or otherwise assert their speedy trial rights) until 12 months (Perkins) and 14 months (Irving) after arrest; trial was held four months (Perkins) and six months (Irving) thereafter. Moreover, there is little evidence that they suffered significant prejudice from the delay between arrest and trial. Appellants point out that they were incarcerated during the delay. Nonetheless, the level of prejudice attributable to incarceration was reduced substantially because each spent a major portion of that period detained and awaiting trial on unrelated and preexisting charges. We agree with Judge Ugast's assessment that "the fact defendants have gone to trial on earlier charges during the time they were awaiting trial in this case minimizes any prejudice they assert." We find appellants' other claims of prejudice to be without merit.[3]

When the above factors are evaluated, we conclude that the government has carried its burden of refuting appellants' prima facie claim of a denial of their rights to a speedy trial.

## II. Continued Polling of the Jury and Resumption of Deliberations

After the foreman announced that the jury had recorded a unanimous guilty verdict as to all seven counts charged against Irving and all six counts charged against Perkins, the court polled the jury. Each of the first nine jurors indicated agreement with each count individually, responding first to inquiries regarding Perkins' charges and then to inquiries regarding Irving's charges. When juror number ten responded, she announced guilty as to the first four counts against Perkins but indicated that she did not agree with the verdict on the fifth count charging appellants with the felony murder of Gaddy Little.

The trial judge immediately stopped the jury poll and convened a bench conference. The judge indicated that he would stop the poll of juror number ten as to Perkins and move on to poll her about Irving. Although counsel for Perkins requested a mistrial on

3. Appellant Irving suggests on appeal that certain unidentified witnesses may have become unavailable to the defense as a result of the delay. This conjecture is too speculative to carry any weight in our consideration of this issue. *See Jefferson v. United States*, 382 A.2d 1030, 1032 (D.C.1978). Appellant Perkins contends that he was disadvantaged by the delay because it afforded the government an opportunity to issue the superseding indictment and to conduct a pretrial line-up. Neither of these incidental results of the delay represents cognizable prejudice. The fact that the prosecution expands or strengthens its case during a period of delay does not constitute prejudice, absent some evidence that the delay was obtained to achieve these ends.

the fifth count at this time, both of appellants' counsel agreed to the judge's proposal to continue with the poll.

When questioned as to Irving, juror number ten responded guilty as to the first four counts but again stated that she did not agree with the guilty verdict announced on count five. After a brief recess, the judge suggested that the polling be continued with jurors number eleven and twelve, limited to the first four counts. Both defense counsel again indicated that they had no objection to this procedure. Jurors eleven and twelve were polled and each responded guilty as to the first four counts for each appellant. These two jurors were not polled with respect to counts five, six, and seven.

The following day, the trial judge entertained mistrial motions from defense counsel for both appellants and then reconvened the jury. The judge read to the jury Criminal Jury Instruction 2.93 (3d ed. 1978), and the supplemental jury instruction recommended by this court in *Crowder v. United States,* 383 A.2d 336, 342 n. 11 (1978).[4] He then asked the jury to resume its deliberations.

After several hours, the foreman informed the judge that the jury remained unable to reach a unanimous verdict on counts five and six dealing with the felony murder and the attempted robbery of Gaddy Little. There was, however, unanimity as to count seven, charging appellant Irving with unlawful possession of a pistol. The judge accepted the jury's verdicts on counts one through four, and seven, and discharged the jury.

Appellants both argue that the trial judge erred in permitting the continued polling of the jury, even as to counts one through four, after a dissent was registered on count five. Appellant Irving further asserts that the court erred in allowing resumption of deliberations under the particular facts of this case. We address these arguments in turn.

Appellants maintain that Super.Ct. Crim.R. 31(d)[5] provides the court with only two alternatives when disagreement is expressed during a jury poll: to send the jury back for further deliberations or to declare a mistrial and discharge the jury. Any additional polling of the jury, it is argued, is error. To support their position, appellants rely heavily on *In Re Pearson,* 262 A.2d 337 (D.C.1970). In that case, this court held that, because "the potential prejudice in continuing the poll" was not outweighed by "a 'useful purpose,'" it was error for the trial court to continue polling after one of the jurors voiced dissent. *Id.* at 339. We find *In Re Pearson* distinguishable on both factual and policy grounds.

The defendant in *In Re Pearson* was tried on a one count indictment, and, after deliberation, the jury informed the judge that it was prepared to return a guilty verdict. During the jury poll, juror number one ex-

4. The supplemental instruction given by the trial judge provided:

Now, it's your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not artisans, you are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence and the case.

In *Crowder, supra,* we concluded that, while each case must be considered on its particular facts, this supplemental instruction might well "reduce[ ] the likelihood of undue coercion and thereby validate[ ] the trial court's decision to return the jury for further deliberations." 383 A.2d at 342 n. 11.

5. Super.Ct.Crim.R. 31(d) provides:

*Poll of Jury.* When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is no unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

pressed reservations about the defendant's guilt. The trial judge went on to poll the remaining eleven members of the jury, ascertaining that each concurred in the verdict of guilty as originally announced. The judge instructed the jury to resume deliberations but recalled the jury after a short period of time without any indication that a unanimous verdict had been reached. At this point, the judge inquired whether the split was still eleven to one and asked juror number one if her reservations about the defendant's guilt persisted. Juror number one acquiesced: "I'll change it to guilty." On these facts, this court reversed the conviction.

The "potential harm" that concerned the court in *In Re Pearson* was that continued polling would exert a coercive effect on the dissenting juror by isolating that juror in open court and making clear that he or she was the lone person holding to a decidedly minority position. This coercion would taint further deliberations.

This reasoning is powerful in the context of a single count indictment or when the poll is continued on the same count as to which disagreement has been expressed. In the present case, however, the continuation of the poll did nothing to increase the "isolation" of juror number ten. Juror number ten's indication of dissent immediately made clear her disagreement with jurors one through nine and left uncertain her position vis-a-vis jurors eleven and twelve, who were not polled on count five. The limited polling of jurors eleven and twelve on counts one through four did nothing to alter this situation before the resumption of deliberations.

Moreover, in contrast to the situation in *In Re Pearson,* a "useful purpose" was served by continuing the polling in the present case. The court in *In Re Pearson* correctly pointed out that continued polling on a count which is already the subject of a dissent serves no purpose other than to reveal the precise numerical division of the jury. In the present case, however, continued polling provided the court with valuable information regarding the advisability of asking the jury to resume deliberations. If jurors eleven or twelve had expressed disagreement with the verdicts on counts one through four, the judge might well have decided that the jury was sufficiently discordant to warrant a mistrial on all counts.[6]

In short, we read the prohibition on continued polling set forth in *In Re Pearson* to preclude continued polling only on those counts as to which disagreement has been registered. In cases such as the present one, where useful purposes outweigh potential for coercion, continued polling is not error.[7]

We next consider whether, irrespective of the decision to continue the jury poll, the trial judge abused his discretion by permitting the jury to resume deliberations. In *Crowder, supra,* this court held that the trial judge erred when he permitted further deliberations, rather than granting a mistrial, after the jury poll revealed disagreement on the part of the twelfth and final

6. In other cases, where the disagreement is on a less important count in the indictment, continued polling may reveal unanimity as to the bulk of the charges and thus persuade the court or the prosecution to accept the unanimous verdicts without further deliberations. *See Ellis v. United States,* 395 A.2d 404, 408 (D.C. 1978).

7. Appellant Perkins raises a second concern not dealt with in *In Re Pearson.* Perkins claims that once juror number ten expressed disagreement with respect to the verdict on count five, coercive pressure was exerted on jurors eleven and twelve not to dissent when polled on counts one through four. Perkins' argument, as we understand it, is that juror number ten's dissent exposed the intimidating nature of expressing disagreement during the jury poll and thereby may have deterred the remaining jurors from expressing reservations and putting themselves in a position of isolation. We find this argument untenable, absent some indication that the dissenting juror was openly reprimanded or suffered in some manner as a result of her willingness to express disagreement, and note that we have implicitly rejected it in the past. *Ellis v. United States,* 395 A.2d 404, 407–08 (D.C.1978).

juror polled. The *Crowder* opinion is expressly limited to *"the facts of this case."* 383 A.2d at 342 (emphasis in original).

■ The present case is distinguishable from *Crowder* in several crucial respects. Juror number ten was never isolated as the sole dissenter on any count, and the precise numerical division of the jury was not disclosed by the poll. Neither appellant was ultimately convicted on any count as to which dissent was expressed. And the judge here gave the jurors the supplementary instruction recommended by the court in *Crowder, see* note 6 *supra,* before sending them back to the jury room. In light of these facts, we are convinced that the jury freely and fairly arrived at a unanimous verdict.

### III. SUFFICIENCY OF THE EVIDENCE

■ Appellant Perkins argues that the evidence presented at trial was insufficient to support his convictions for the armed robbery and the attempted robbery while armed at the Stanton Road parking lot. Perkins does not dispute that the evidence shows he and Irving acted in concert to rob two men at Birney Place on January 28, 1981, sometime between 8:00 and 9:00 p.m. The evidence further shows that Thomas Johnson drove Perkins and Irving from the Birney Place area to a point near the Stanton Road parking lot and that the two men left Johnson's car together while Johnson waited for them.

William Farmer testified that at around 9:30 p.m. he was standing in the Stanton Road parking lot, in front of his home, when a man approached him from behind, brandished a gun, and demanded his money. The assailant pulled Farmer over to a fence and began going through Farmer's pockets. At the fence, Farmer and his assailant were joined by Larry Mickey and a man Mickey later identified as appellant Irving. Irving held a gun on Mickey as he went through Mickey's pockets.

Mickey testified that during this time Irving looked toward Gaddy Little, who was in another area of the parking lot, and

said to the man holding Farmer: "[W]e're going down there and get him next." When the two men finished with Farmer and Mickey, they forced their two victims to walk through a gate in the fence together. Thomas Johnson testified that Irving and Perkins returned to his car together and that the men divided the proceeds from the Birney Place and Stanton Road robberies.

Based on this evidence, it was reasonable for the jury to conclude that the man who held William Farmer at gunpoint and attempted to rob him was appellant Perkins. It was also reasonable to conclude that Perkins was acting in concert with Irving during this period, and thus Perkins' conviction for the armed robbery of Larry Mickey must also stand.

*Affirmed.*