James A. ARTIS, Appellant,

v.

UNITED STATES, Appellee.

No. 83–538.

District of Columbia Court of Appeals.

Argued Feb. 6, 1985.

Decided Feb. 13, 1986.

[**] Associate Judge Terry is recused from these
cases.

Ellen Burkhardt, Law Student Counsel, with whom Steven H. Goldblatt, Supervising Attorney, Washington, D.C., Susan L.

Siegal, Appellate Law Fellow, and Raul Salinas, Law Student Counsel, was on briefs, for appellant.

Wendy Bebie, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before NEBEKER, MACK and BELSON, Associate Judges.

BELSON, Associate Judge:

A jury found appellant guilty of three counts of burglary in the second degree, D.C.Code § 22–1801(b) (1981), one count of grand larceny, *id.*, 22–2201, *repealed and superseded by* District of Columbia Theft and White Collar Crimes Act of 1982, D.C.Law 4–164, §§ 111, 602(y), 29 D.C.R. 3976, 3978, 3995, and two counts of petit larceny, *id.*, at 22–2202, *repealed and superseded by* D.C.Law 4–164, §§ 111, 602(z), 29 D.C.R. 3976, 3978, 3995. He assigns as error trial court rulings (1) curtailing bias cross-examination of a government witness; (2) admitting evidence of other crimes; and (3) polling the jury and ordering resumption of deliberations after a juror dissented from a verdict.[1] We affirm.

## I

The offenses of which appellant was convicted were committed at a video arcade and an adjoining warehouse at 1226 South Capitol Street, S.E. The complainant, Sylvester Watson, owned both the arcade and the warehouse, and employed appellant as manager of the former. On the nights of September 17, 19 and 20, 1981, appellant induced and directed an eleven-year-old juvenile, D.N., to climb through a hole in the wall in the arcade into the adjoining warehouse office and to take money. D.N. then

---

1. Appellant also claims that the prosecutor's closing argument contained prejudicial comments warranting reversal of the conviction. Our review of the record compels us to conclude that the statements, even if we assume them erroneous, did not rise to the level of "substantial prejudice" required to justify reversal. (*Phillip*) *Dyson v. United States*, 418 A.2d 127, 132 (D.C.1980); *accord, Jaggers v. United States*, 482 A.2d 786, 796 (D.C.1984) (quoting (*Duane*) *Dyson v. United States*, 450 A.2d 432, 437 (D.C.1982)); *Sherrod v. United States*, 478 A.2d 644, 655 (D.C.1984) (quoting *McCowan v. United States*, 458 A.2d 1191, 1196–97 (D.C. 1983)).

delivered the proceeds of the theft to appellant. D.N. also purloined from the warehouse a tape recorder and some tapes, which he retained for himself. After completing the last of the three episodes of thievery, D.N. showed the recorder to his nephew, Lawrence "Putney" Brown and recounted to Brown how he had obtained it.

Several days later D.N. returned with the tape recorder to the arcade. There he was seen by Watson's nephew, who notified Watson. Watson questioned D.N. about his possession of the tape recorder and threatened to call the police and press charges against him. D.N. then told Watson that "Artis told me to do it." Watson called the police and upon their arrival D.N. demonstrated how he had climbed through the arcade wall at appellant's bidding.

II

Appellant contends that the trial court violated his Sixth Amendment right of confrontation by refusing to allow cross-examination of government witness D.N. to demonstrate D.N.'s bias when he initially implicated appellant in the warehouse burglaries. Appellant sought to show that D.N. had juvenile charges pending on September 20, 1981, when D.N. told his nephew, Lawrence Brown, of appellant's involvement in the burglaries, and on October 2, 1981, when he made incriminating statements about appellant to Watson and to the police. The record reveals that in August 1981, D.N. had entered pleas of guilty to juvenile charges of breaking and entering a vending machine in one case and of robbery in another case. It was not until November 1981, that D.N. was sentenced in connection with these cases, which means that the charges were pending final disposition in September and Octo-

ber 1981, when D.N. implicated appellant in the warehouse burglaries. Appellant maintains, as he did at trial, that the pendency of disposition of the juvenile charges furnished D.N. with good cause to curry favor with the government in the hope of obtaining a lenient sentence and that the trial court committed reversible error by disallowing appellant from cross-examining D.N. about this potential source of bias.

The confrontation clause of the Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to effective cross-examination of government witnesses, particularly with respect to the witnesses' bias, prejudice or motivation in testifying for the government.[2] *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); *Sherer v. United States*, 470 A.2d 732, 736 (D.C.1983); *McNeil v. United States*, 465 A.2d 807, 811 (D.C.1983); *Springer v. United States*, 388 A.2d 846, 854–55 (D.C.1978). An accused's right to cross-examine adverse witnesses is not, however, without limits. *Beynum v. United States*, 480 A.2d 698, 706 (D.C.1984); *Reed v. United States*, 452 A.2d 1173, 1176 (D.C.1982), *cert. denied*, 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983). We have said that

> Where the trial court limits a specific inquiry into an admittedly material subject relevant to a witness' bias or motive for testifying, but generally permits extensive cross-examination on the issue, this court will not reverse if the error in excluding the relevant inquiry was harmless beyond a reasonable doubt.

*McNeil*, 465 A.2d at 811 (citation omitted); *see Goldman v. United States*, 473 A.2d 852, 857 (D.C.1984); *Tabron v. United*

**2.** A government witness is susceptible to impeachment for bias not only if he had a relationship with the court, such as probation, at the time of trial but also if he had such a relationship when the government was in touch with him during investigation of the crime. *Tabron v. United States*, 444 A.2d 942, 943 (D.C.1982). A witness with a relationship to the court "may make statements to an investigator ... in order to curry favor, and then be called to testify after [the relationship] is ended. The witness may feel compelled to stick to his original story, without regard to the truth, in order to avoid inconsistencies that could lead to a charge of perjury." *Id.* at 944 n. 2; *see Davis*, 415 U.S. at 317 n. 5, 94 S.Ct. at 1111 n. 5.

*States*, 444 A.2d 942, 944 (D.C.1982); *Springer*, 388 A.2d at 856.

■ Examination of the record in this case reveals that the trial court curtailed an appropriate line of cross-examination respecting D.N.'s liberty interest bias at the time he initially implicated appellant. This was error. The record also discloses, however, that the trial court permitted considerable cross-examination of D.N. that provided the jury sufficient information from which to infer such bias. Defense counsel elicited from D.N. that on January 21, 1982, he had entered a plea of guilty to robbery and agreed to testify for the government at appellant's trial in exchange for which the government agreed (a) to drop some other charges D.N. had picked up subsequent to the warehouse burglaries,[3] and (b) not to charge D.N. in connection with his participation in the warehouse burglaries. The jury also learned that, when he testified at trial against appellant, D.N. was on probation for simple assault for which he had been arrested one year subsequent to the warehouse burglaries and that his probation was to be reviewed approximately one month later. The cross-examination of D.N. which the trial court permitted effectively highlighted his motives to curry favor with the government to escape prosecution for the warehouse burglaries and for subsequent offenses, and to avoid possible revocation of his probation. Accordingly, the test of constitutional harmless error applies. *See Springer*, 388 A.2d at 856 (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

■ Curtailment of constitutionally-protected cross-examination constitutes harmless error where it is "clear beyond a reasonable doubt '(1) that the defendant would have been convicted without the witness' testimony, or (2) that the restricted line of inquiry would not have weakened the im-

pact of the witness' testimony.'" *Springer*, 388 A.2d at 856 (citation omitted); *accord Goldman*, 473 A.2d at 857; *McNeil*, 465 A.2d at 812; *Tabron*, 444 A.2d at 944. We apply the first element of the test when we cannot determine what facts defense counsel would have elicited upon cross-examination, and the second element when the excluded testimony is available for our review. *Goldman*, 473 A.2d at 857; *Tabron*, 444 A.2d at 944.

Although the trial court did not transmit under seal to this court, prescribed by *Lewis v. United States*, 393 A.2d 109, 119 (D.C. 1978) (*Lewis I*) and *Lewis v. United States*, 408 A.2d 303, 312 (D.C.1979) (*Lewis II*), the juvenile records in the two cases about which the trial court prohibited defense counsel from cross-examining D.N., we have obtained the records and take judicial notice of them. *See Ludington v. Bogdanoff*, 256 A.2d 921, 922 n. 2 (D.C.1969). Hence we apply the second element of the *Springer* harmless error test. As we have recounted already, cross-examination of D.N. demonstrated to the jury that he had several strong incentives to cooperate with the government and to shift blame to appellant. We are satisfied beyond any reasonable doubt that disclosure of, and cross-examination about, D.N.'s juvenile charges pending final disposition at the time he implicated appellant in the warehouse burglaries, would not have weakened the impact of his testimony. *See Tabron*, 444 A.2d at 944–45. Consequently, the trial court's error in curtailing such cross-examination was harmless and does not warrant reversal.

### III

Appellant next contends that the trial court erred by admitting evidence of his purported prior illegal activity. Testimony was adduced at trial that on June 10, 1981, appellant asked four juveniles to help him

---

3. The plea agreement covered two cases pending against D.N. In the first, D.N. had been arrested on December 14, 1981, and charged with felony destruction of property and unlaw-

ful entry. In the second case, D.N. had been arrested on December 28, 1981, and charged with armed robbery and possession of a prohibited weapon (BB gun).

retrieve from the apartment of his niece a stereo he told them he had lent her. Appellant and the four boys drove to his niece's apartment that afternoon and knocked on the front door. When no one answered, appellant, without his niece's permission, instructed the youths to go around the back, reach in through a hole in the screen, unlock the door, enter and bring out the stereo. They complied, removing one stereo speaker. But when they observed that appellant had driven his car away from the front of the building, they returned the speaker to the apartment and walked back down the street. The police apprehended the boys moments later.

Evidence of criminal acts, independent of the ones charged, generally is inadmissible, *Bigelow v. United States*, 498 A.2d 210, 212 (D.C.1985), unless introduced for some "substantial legitimate purpose," *Gates v. United States*, 481 A.2d 120, 123 (D.C. 1984) (quoting *Drew v. United States*, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964)), such as identity, *Gates*, 481 A.2d at 123–24; *Brooks v. United States*, 448 A.2d 253, 257 (D.C.1982), so long as identity is a genuine and material issue in the case, the evidence is probative of that issue, *Bigelow*, 498 A.2d at 213, and the probative value of the evidence outweighs its prejudicial effect, *id.* at 214.[4] Evidence of the accused's prior wrongful conduct is admissible on the issue of identity "if the evidence shows that the defendant has committed crimes so nearly identical in method that it is likely that the present offense has been committed by him." *Bridges v. United States*, 381 A.2d 1073, 1075 (D.C.1977), *cert. denied*, 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978) quoted in *Campbell v. United States*, 450 A.2d 428, 431 (D.C.1982). Otherwise stated, when circumstances surrounding the prior crime and the charged crime "demonstrate ['] that there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed,'" then evidence of the former is admissible in the trial of the latter to prove identity. *Brooks*, 448 A.2d at 257 (quoting *Drew*, 118 U.S.App.D.C. at 16, 331 F.2d at 90); *Bridges*, 381 A.2d at 1075 (same); *see Evans v. United States*, 392 A.2d 1015, 1020 (D.C.1978). We have said that "the admission of other crimes evidence need not depend on the presence of one distinctive similarity but the court can consider the totality of the factual circumstances which, amalgamated, lay a sufficient basis for admission.... *Gates*, 481 A.2d at 123. Our standard of review is whether the trial court abused its discretion in admitting the evidence. *Id.*

In this case, the trial court admitted the evidence of the June 10 burglary after observing that it would show "a Fagin operation, that seems to have a rather clear, definite kind of earmark similarity to it." Numerous similarities between the method used in the June 10 burglary and that employed in the warehouse burglaries warrant the court's ruling. First, appellant knew and associated with both of the victims. Second, appellant was able to determine that the victims would not be present when the burglaries were attempted.[5] Third, appellant recruited juveniles to assist him. Fourth, appellant falsely told the juveniles he had a right to the property.[6]

---

4. Where, as in this case, the evidence of other wrongful conduct has not yet been adjudicated a crime, there must be clear and convincing evidence establishing the accused's connection with the prior unlawful activity. *See Page v. United States*, 438 A.2d 195, 198 (D.C.1981); *Light v. United States*, 360 A.2d 479, 481 n. 3 (D.C.1976). Here, there was eyewitness testimony about appellant's involvement in the June 10, 1981, burglary and, hence, the requisite clear and convincing evidence. *See Page*, 438 A.2d at 198.

5. Appellant was an employee of Watson's and managed the arcade adjacent to Watson's warehouse. Appellant's niece had informed him of the time she usually left her apartment to go to work.

6. Appellant told D.N. that Watson owed appellant some money. He told the youths on June 10, 1981, that the stereo in his niece's apartment belonged to him.

Fifth, appellant went to the respective scenes of the burglaries and supervised the boys from nearby. Sixth, appellant encouraged the youths by feigning a willingness to obtain the property himself.[7]

Viewing these numerous factual circumstances as a whole, we are satisfied that the trial court did not abuse its discretion in ruling that the evidence of the June 10, 1981, burglary was probative of identity. It was not, of course, directly probative on that issue. Rather, by demonstrating that appellant had during the same general time period engaged in "a Fagin operation" that bore many points of similarity to the operation D.N. described, the government showed that this crime bore appellant's signature. As McCormick recognizes, the use of evidence of other crimes to prove identity is usually not direct, but through "an intermediate channel" such as signature.[8]

Moreover, the identity of the perpetrator of the warehouse burglaries was a material issue in the case. Appellant's defense was denial. Therefore evidence of the June 10, 1981, burglary was relevant to prove the identity of appellant as instigator of the burglaries. Undoubtedly, the evidence was prejudicial to appellant. But probative evidence of prior criminal activity is inherently prejudicial. *Gates*, 481 A.2d at 124; *Campbell*, 450 A.2d at 431. Here, the trial court instructed the jury both immediately after the evidence was introduced and in the final charge as to the limited permissible use of the evidence of the June 10, 1981, burglary. We are satisfied that the trial court did not abuse its discretion in

admitting the evidence. *See Bigelow*, 498 A.2d at 214; *Gates*, 481 A.2d at 124.

## IV

After the foreman reported that the jury had reached a unanimous verdict of guilty as charged on counts one through five and guilty of the lesser-included offense of petit larceny on count six, defense counsel requested a jury poll. The trial judge began to poll each juror as to each of the counts. The first juror announced guilty as to the first three counts. When asked about count four, however, juror number one initially responded that he found appellant guilty, then changed his vote to not guilty. A bench conference ensued. Upon the suggestion of government counsel, without objection by defense counsel, the court polled each juror on all counts except count four. The jury indicated guilty on counts one, two, three, five, and the lesser-included offense of count six. Defense counsel then moved for a mistrial on count four. Instead, the trial court, without further instruction, ordered the jury to resume its deliberations on that count. When the jury returned, the foreman announced that it had reached a verdict of guilty on count four. At defense counsel's request, the trial court polled each juror on count four; all indicated adherence to the verdict reported by the foreman.

Appellant advances several arguments challenging the procedures by which the jury was polled and resumed its deliberations. We address each argument in turn.

---

7. Appellant told D.N. that he, appellant, could not get into the warehouse office because the pinball machine, onto which one had to climb to reach the hole connecting the arcade to the warehouse, would not bear appellant's weight. On June 10, 1981, appellant knocked on the front door of his niece's apartment, telling the youths his niece knew he was coming and was supposed to be there.

8. McCormick lists proof of identity as the eighth of ten permissible uses of evidence of other crimes. It states:

(8) To prove identity. This is accepted as one of the ultimate purposes for which evidence of other criminal conduct will be received. It is believed, however, that a need for proving identity is not ordinarily of itself a ticket of admission, but that the evidence will usually follow, as an intermediate channel, some one or more of the other theories here listed. Probably the second (larger plan), the third (distinctive device) and the sixth (motive) are most often resorted to for this purpose.

McCORMICK ON EVIDENCE § 190 (E. Cleary, 2d.ed.1972) (footnote omitted).

 First appellant contends the trial court erred in continuing the polling on counts one, two, three, five and six after juror number one registered disagreement on count four. This court has held, however, that it is not error to continue polling on counts which are not the subject of a dissent "where useful purposes outweigh potential for coercion." *Perkins v. United States*, 473 A.2d 841, 846 (D.C.1984). The continued polling in the instant case served the useful purpose of providing the court valuable information from which it could decide whether to declare a mistrial or to direct the jury to retire for further deliberations, pursuant to Super.Ct.Crim.R. 31(d). *See id.* On the other hand, the potential for coercion was negligible because the precise numerical division of the jury on count four was not disclosed by the poll and juror number one was never isolated as the sole dissenter on any count. *Compare Crowder v. United States*, 383 A.2d 336, 341–43 (D.C.1978) (reversing conviction where last juror polled registered dissent); *Kendall v. United States*, 349 A.2d 464 (1975) (reversing conviction where poll continued on count with which first juror expressed disagreement); *In re Pearson*, 262 A.2d 337 (D.C.1970) (same). We find no error in the trial court's decision to continue the jury poll on the counts with which juror number one had not dissented.

 Appellant next notes that, because the trial court changed the method of polling after juror number one had dissented on count four, that juror was subjected to repeated polling on the first three counts before any other juror was polled. Appellant argues that this situation potentially intimidated all of the jurors to vote with the majority in the ensuing poll and deliberations. We disagree. The record reflects no indication that the repeated polling of juror number one deterred the remaining jurors from expressing reservations they might have had with the verdicts. *See Ellis v. United States*, 395 A.2d 404, 408 (D.C.1978), *cert. denied*, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979). Significantly, the repeated polling took place with respect to counts on which juror number one assented to the verdicts announced by the foreperson. The trial court did not interrogate or reprimand juror number one with respect to the count on which he dissented, nor did the court attempt to persuade him to alter his vote. *See Perkins*, 473 A.2d at 846 n. 7; *Ellis*, 395 A.2d at 408. In sum, we are satisfied that the polling procedure used by the trial court was not so coercive of the jurors' free will as to constitute an abuse of the court's discretion. *See Ellis*, 395 A.2d at 408; *United States v. Brooks*, 137 U.S.App.D.C. 147, 151, 420 F.2d 1350, 1354 (1969).

 We also reject appellant's final contention that the court erred by directing resumption of jury deliberations on count four without giving the jury any further instruction. In view of appellant's failure to request such instruction, the trial court was under no duty to instruct, *see* Super. Ct.Crim.R. 30; *Johnson v. United States*, 387 A.2d 1084, 1088–89 n. 9 (D.C.1978) (en banc), and this court is under no duty to reverse absent plain error, *cf. Bennett v. United States*, 375 A.2d 499, 503–04 (D.C. 1977). Even assuming the trial court erred, we find that the court's failure to instruct was not "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc); *accord Johnson*, 387 A.2d at 1089. The potentially coercive impact of requiring the jury to deliberate further without instruction was greatly diminished because juror number one was not isolated as a sole dissenter and because the numerical split of the jury on count four was not revealed in open court. *See Perkins*, 473 A.2d at 846–47; *Crowder*, 383 A.2d at 343 n. 14. Upon consideration of these facts, we are convinced the jury reached a unanimous verdict on count four in a free and fair manner.

*Affirmed.*