Edward L. **NELLSON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 05–CF–108.

District of Columbia Court of Appeals.

Argued Sept. 2, 2009.
Decided March 4, 2010.

Lee R. Goebes, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Patricia A. Heffernan, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, and Emory V. Cole, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, BLACKBURNE–RIGSBY, Associate Judge, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant Edward Nellson was convicted of conspiracy to commit murder in violation of D.C.Code § 22–1805a (2001); first-degree burglary while armed in violation of D.C.Code §§ 22–801(a), –4502; armed robbery in violation of D.C.Code §§ 22–2801, –4502; felony murder (predicated on first-degree burglary while armed) in violation of D.C.Code §§ 22–2101, –4502; felony murder (predicated on armed robbery) in violation of D.C.Code §§ 22–2101, –4502; premeditated first-degree murder while armed in violation of D.C.Code §§ 22–2101, –4502; and two counts of carrying a dangerous weapon (a wooden stick and ligatures) in violation of D.C.Code § 22–4504(a) in relation to the murder of Daniel Krug. The jury also concluded that the murder was especially atrocious, heinous, or cruel under D.C.Code § 22–2104.01(b)(4). On appeal, appellant contends that the trial court erred in permitting the United States to introduce evidence of appellant's involvement in a prior, similar crime under the signature crime exception. We affirm.

**I.**

The evidence at trial showed that Daniel Krug, a George Washington MBA student, was found strangled to death in his Foggy Bottom apartment on June 1, 2002. Krug's eyes, neck, hands, and ankles were bound with a combination of black duct tape, strips of sheet cut from his futon,

black cable ties, an electrical cord from a nearby television set, and a pair of boys size 14 underwear. Krug also suffered a head trauma consistent with being hit with a police baton. Police recovered a knife, black cable ties, and Krug's cell phone from the apartment's bathroom. Two partially smoked cigarettes were found in the apartment, and DNA testing proved that appellant was the source of the saliva on both of them. Krug's apartment door showed no sign of forced entry, and the three windows of the apartment opened onto an alley, with pipes running from the kitchen window to the ground, allowing a person to climb into the apartment.

For the six months preceding Krug's death, appellant and Stephen Burciaga,[1] a University of Maryland student, had been making hypothetical plans to commit robberies. Appellant had moved into Burciaga's rented room on May 22, 2002, and on May 30, 2002, appellant made plans to rob prostitutes who advertised their services as masseuses, one in the District of Columbia and two in Virginia, using Burciaga as the getaway driver. Appellant and Burciaga then drove to two of the locations advertised: one building in Virginia and one in Foggy Bottom. After visiting one Virginia location, appellant decided that the two locations in Virginia were inappropriate for a robbery, but told Burciaga that they would return to Foggy Bottom later that night. At 2:00 a.m., on May 31, 2002, the two returned to the Foggy Bottom location and appellant left the car alone with a duffle bag packed with a baton, duct tape, black cable ties, clothing, and a pistol. Appellant told Burciaga that he had the access code to the building and that he could climb through windows. While Burciaga waited for four hours in

the car, he sent numerous text messages from his cell phone to appellant's cell phone, exhorting appellant to hurry up and return. At approximately 5:00 a.m., appellant called Burciaga to report that he would be returning soon from a phone number that Burciaga did not recognize. Appellant returned to the car at 6:00 a.m. and told Burciaga various stories, stating that he had robbed and/or killed a prostitute and/or a pimp. Appellant returned with a laptop, credit cards, and $10 in quarters.

Appellant was arrested in Ocean City, Maryland on June 3, 2002. Police found on appellant's person receipts for purchases linked to Krug's credit card, toiletry items purchased with Krug's credit card, a loaded pistol, a gun holster, two magazines with ammunition, a wooden baton covered in black tape, a box cutter, 3 rolls of black duct tape, a ski mask, two cell phones, a lighter, and a wallet. Pursuant to a search warrant executed on Burciaga's room, police recovered Krug's stolen laptop, with the new user name "Ed," and appellant's duffel bag containing a shotgun. Appellant was also linked to Krug's murder through a number of purchases and ATM withdrawals of cash that he and Burciaga made with Krug's credit card.[2] In addition, cell phone records showed text messages between appellant's and Burciaga's cell phones and phone calls between Krug's and Burciaga's cell phones in the early morning hours of May 31, 2002.

Before appellant's trial, the government filed notice of its intent to introduce evidence regarding, *inter alia,* appellant's involvement in a burglary that occurred in Alexandria, Virginia, approximately five months before Krug's murder. The appellant had confessed to committing the Alex-

---

1. Burciaga admitted his role in the burglary and entered a guilty plea to second-degree murder. His sentencing was pending at the time of appellant's trial.

2. The use of Krug's credit card at an ATM machine to withdraw cash required the use of Krug's PIN number.

andria burglary, and the trial court listened to a tape of his confession. In that burglary, appellant rappelled down the side of a seventeen story building in the middle of the night, into a top floor apartment. He was joined by two others and together, they used plastic cable ties and duct tape to bind the two residents's hands and feet, and placed a pillow case and a cap over the victims's eyes and face. Appellant kicked one victim several times, demanding PIN numbers for his credit cards. Appellant stole from the apartment a computer, a baseball card collection worth several thousand dollars, credit cards, and money. One victim was badly beaten, his throat was cut, and his hands were blue from tight bindings. Appellant claimed that he committed the Alexandria burglary because he knew and did not like the victim that he violently abused.

The government argued to the trial court that evidence of the Alexandria crime was admissible at trial to prove identity, pointing out the similarities between the crimes. The trial court told defense counsel to assume that the evidence of the burglary would be admitted, but deferred ruling on the issue until the close of the government's evidence. The government did not refer to the Alexandria burglary in its opening statement, but defense counsel stated in its opening that appellant had committed the Alexandria burglary, had told Burciaga about the burglary, and Burciaga had murdered Krug using appellant's signature techniques to frame appellant.

The parties again discussed the admissibility of the Alexandria burglary with the court before one of the Alexandria victims was to testify. The government argued that the evidence of the Alexandria burglary should be admitted to show a common scheme or plan and the absence of mistake

in light of the defense theory that appellant had been framed. The court ruled that evidence of the Alexandria burglary could be admitted through the testimony of one of the victims. The court opined that the use of duct tape and cable ties to bind the victims was "probably at the heart of it, along with these other aspects of it. They're not exactly the same but I think they're close enough that it should be admitted." The court warned the prosecutor to keep the Alexandria burglary victim's testimony narrow to reduce potential prejudice. The court also gave a limiting instruction to the jury immediately after the victim testified, and once again after the introduction of appellant's recorded confession and the testimony of an Alexandria police officer.

Appellant testified at trial that he is 5 feet tall and weighs 107 pounds. He testified that when he was in jail for a 1995 conviction of armed robbery, gang members taught him how to plan and execute home invasions by restraining occupants quickly using cable ties and duct tape, and by immediately covering the victims's eyes. He stated that he developed additional burglary skills after prison, including entering apartments from outside through a window or balcony. Appellant spoke of his practice of targeting prostitutes and drug dealers and of using a getaway car in his robberies. He testified in detail about his primary role in planning and executing the Alexandria burglary.[3] He also testified about accompanying Burciaga to Krug's home on the night of the murder, but denied killing him. Appellant implicated Burciaga in the murder.

In closing, defense counsel argued that the details of Krug's murder were different from the techniques appellant admitted to using in his many burglaries, so that the

---

3. Appellant also testified about a number of other burglaries he committed by targeting prostitutes and drug dealers.

murder must have been committed by someone who was "mimicking" appellant's other crimes. The jury found appellant guilty on all counts. Appellant appeals.

## II.

■■■ "It is a principle of long standing in our law that evidence of one crime is inadmissible to prove disposition to commit crime, from which the jury may infer that the defendant committed the crime charged." *Drew v. United States,* 118 U.S.App. D.C. 11, 15, 331 F.2d 85, 89–90 (1964) (emphasis omitted). However, evidence of other crimes committed by a defendant is admissible at trial when relevant to, *inter alia,* "the identity of the person charged with the commission of the crime on trial." *Bridges v. United States,* 381 A.2d 1073, 1075 (D.C.1977). "[W]hen circumstances surrounding the prior crime and the charged crime demonstrate that there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive traits relating to the manner in which the crimes were committed, then evidence of the former is admissible in the trial of the latter to prove identity." *Artis v. United States,* 505 A.2d 52, 56 (D.C.1986) (internal quotation marks and citations omitted). "[T]here must be enough points of similarity in the combination of circumstances surrounding the two crimes to create a reasonable probability that the same person committed each." *Ifelowo v. United States,* 778 A.2d 285, 290 (D.C.2001) (internal quotation marks and citations omitted). We review the trial court's ruling to permit the introduction of other crimes evidence for an abuse of discretion. *Artis, supra,* 505 A.2d at 56.

Appellant argues that the trial court erred in admitting evidence that appellant participated in a home invasion burglary in Alexandria at Krug's murder trial because the evidence of the two crimes were not similar enough to prove identity. He contends that the two crimes occurred over five months apart, in different cities, employed disparate numbers of accomplices, used different kinds of violence, involved different methods of entry, were animated by different motivations, and targeted different types of buildings and victims. Appellant argues that the trial court's focus on the use of duct tape and cable ties during both crimes was erroneous because they are commonplace items regularly used in crimes, and because Krug was also restrained and choked with items found in his apartment, including strips of a sheet and a television cord. We are unconvinced that in the face of these arguments, the trial court erred in admitting the Alexandria evidence to assist in establishing Nellson's identity.

In comparing the evidence of the two crimes, we note that both entries were made by stealth and through an unconventional route,[4] both were made in the middle of the night, both crimes involved similar levels of violence, and both crimes were perpetrated with the use of accomplices. Furthermore, victims in both burglaries were immediately incapacitated and bound with the same type of cable ties and duct tape, their eyes were immediately covered, they were beaten until they divulged their credit card PIN numbers,[5] and they were robbed of their computers and credit cards. From this "concurrence of unusual

---

4. The inference that appellant entered Krug's apartment through a window was strong since there was no sign of forced entry to Krug's apartment door, appellant told Burciaga that he could enter an apartment through

its window, and it would have been possible for a person to climb into Krug's window.

5. A permissible inference from the evidence of Krug's injuries and the evidence of appellant's use of Krug's credit card and PIN num-

and distinctive facts," the trial court could have concluded that a reasonable probability existed that the same person, in this case appellant, perpetrated both crimes. *Drew, supra,* 118 U.S.App. D.C. at 16, 331 F.2d at 90.

Appellant argues that the similarities of the two crimes should be compared at a higher level of specificity. For example, appellant contends that rappelling down a seventeen story building is not sufficiently similar to climbing up pipes into a second floor apartment. The similarities between the two crimes, however, need not be identical for admission under *Drew. Ifelowo, supra,* 778 A.2d at 290. We are satisfied that the Alexandria burglary and Krug's murder employed a combination of unique and similar techniques, including unconventional entries, the use of black cable ties, and torturing victims for PIN numbers, such that there is a reasonable probability that the same person committed both crimes.

Appellant also argues that the use of plastic ties and duct tape are of no moment, as they "are everyday objects, available at any hardware store" and are often used by criminals in committing robberies, burglaries, and other crimes. The use of cable ties and duct tape in both crimes was not the only evidence tying the two crimes together. The trial court noted that the use of ties and tape as ligatures, along with "other aspects" of the crimes, supported the court's ruling. The other, similar aspects of the two crimes include sophisticated tactics that appellant himself admitted to using in other robberies, namely a non-traditional mode of entry requiring agility and stealth, and the immediate incapacitation and blindfolding of victims. More specifically, it is the combination of unique and elaborate methods employed in both crimes, reflecting a distinct modus operandi, that is probative of identity in this case. Accordingly, the trial court permissibly acted within its discretion to admit evidence of the Alexandria burglary in the trial of Krug's murder. *See Artis, supra,* 505 A.2d at 56–57 (evidence of previous burglary admissible at burglary trial where defendant was acquainted with both victims, recruited juveniles to assist him in both crimes, falsely told the youths that he had a right to the property in both crimes, and went to the respective scenes of both burglaries to supervise the youths from nearby); *Easton v. United States,* 533 A.2d 904, 907 (D.C.1987)("Rulings in this area tend to be highly specific to the facts of each particular case[.]"). Therefore, we

*Affirm.*

ber is that Krug was tortured for his PIN number, much like appellant tortured the Al-
exandria burglary victim.