Ronald CAMPBELL, Appellant,

v.

UNITED STATES, Appellee.

No. 80–1044.

District of Columbia Court of Appeals.

Argued April 1, 1982.

Decided Aug. 16, 1982.

Daniel S. Evans, Washington, D. C. appointed by the court, for appellant.

Sylvia Royce, Asst. U. S. Atty., Washington, D. C., with whom Stanley S. Harris, U. S. Atty., John A. Terry, John R. Fisher and A. Carlos Correa, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KERN and FERREN,* Associate Judges.

NEWMAN, Chief Judge:

A jury found appellant guilty of threats to do bodily harm in violation of D.C.Code 1981, § 22–507. Appellant seeks reversal of his conviction on the ground that the trial judge improperly allowed evidence of appellant's prior wrongful conduct to be placed before the jury.[1] We agree and reverse.

## I

### A. *The Government's Evidence*

At approximately 4:00 a. m. on the morning of May 3, 1980, Anita Scholfield and her children were awakened by a telephone call. Miss Scholfield recognized the caller's voice as that of appellant, with whom she had been romantically involved for about four years prior to the relationship's termination in the fall of 1979. The caller, who sounded intoxicated, insisted on speaking to Miss Scholfield. She refused and hung up the phone.

Some time later that morning, Miss Scholfield and her children were again awakened by loud pounding on the apartment's front door. She did not answer the door and moments later heard two gunshots. After phoning the police, she approached the door and observed two bullet holes in the door. Two nine millimeter bullets were found in the apartment by the police.

After the arrival of the police, Miss Scholfield again answered a telephone call. Again, the voice was appellant's, and he sounded intoxicated. Miss Scholfield was told that it did not matter what she or the police did, he was "going to get her."

Miss Scholfield was allowed to testify at length about her previous relationship with the appellant. She testified, *inter alia,* that appellant had a drinking problem and that he generally became abusive and jealous when intoxicated. She indicated that he usually carried a .45 magnum pistol and that on previous occasions he had fired his gun into the air in her presence and fired the gun into a pillow near her head. Additionally, she testified that he had previously slapped her.[2]

Three police officers also testified for the government. Officers John Knott and Gerald Barnes, the investigating officers, testified as to their observation of bullet holes in the front door and their recovery of the bullets—one from inside the bathroom tile and one from inside the living room sofa. Officer Barnes also testified that he had ticketed appellant's car at 3:30 a. m. about fifteen or sixteen blocks from the Scholfield apartment. Officer Thomas Heery, the crime scene investigator, testified about his examination of Miss Scholfield's apartment and his recovery of two nine millimeter shell casings.

### B. *The Defense Evidence*

Appellant Campbell denied either having called Miss Scholfield or visited her apartment on the morning in question. Instead, he spent the early morning hours at two different clubs in Northwest Washington. When he left the second club about 3:30 a. m., he found his car ticketed. He then went straight to his Maryland home.

In rebutting her testimony admitted in the government's case in chief, appellant also testified about his previous relationship with Miss Scholfield, indicating that an amicable termination had taken place at his request in the summer of 1979. While he admitted to carrying a gun and to possessing a large gun collection, he attempted to rebut Miss Scholfield's accusations concerning his past behavior by denying ever having previously threatened or abused her. He indicated that the firing of the gun into the pillow had been an accident. He denied

---

\* Associate Judge Ferren concurs in the result.

1. Appellant also seeks reversal on the ground that the trial judge erroneously allowed the admission of certain lay opinion testimony.

Given our resolution of the first issue, we do not reach this claim.

2. A pretrial objection to the introduction of this line of testimony was overruled.

having a drinking problem as well. Two character witnesses testified on his behalf as to his reputation for truthfulness and one indicated that he had never known appellant to be intoxicated.

## II

It is fundamental to a system of criminal justice based on the presumption of innocence, that the process of adjudication be insulated from evidence of past criminal or wrongful conduct of an accused other than the charged offense. *Harris v. United States*, D.C.App., 366 A.2d 461, 463 (1976). The jury's knowledge of a defendant's unrelated past behavior raises the obvious danger that the jury will infer a disposition on the part of the defendant toward criminal activity and thus find him guilty of the crime charged. Hence, it is the law of this jurisdiction that evidence of other crimes, which are independent of the one charged, is inadmissible unless it comes under one or more well recognized exceptions.[3] *Id.* at 463; *Light v. United States*, D.C.App., 360 A.2d 479, 480 (1976). The proffered evidence of other wrongful conduct by the defendant must be admissible for some legitimate purpose other than to prove the accused's propensity to commit the act in issue.

Evidence directed to an issue other than propensity is not admissible, however, unless the issue is a genuine and material issue in the case. *Willcher v. United States*, D.C.App., 408 A.2d 67, 75–76 (1979); *United States v. James*, 181 U.S.App.D.C. 55, 63 n.46, 555 F.2d 992, 1000 n.46 (1977). Only after it has been determined that an issue has been raised upon which other crimes evidence could be received, is it appropriate for the trial court to determine whether the evidence is relevant to that issue. *Willcher v. United States, supra* at

75. *Cf.* 2 J. WEINSTEIN & M. BERGER, EVIDENCE § 404[09] at 50 (1975).

Even when evidence of wrongful behavior is relevant to a *Drew* exception that is a controverted issue in the case, it must still be excluded by the trial court when the degree of prejudice exceeds the probative value of the evidence. *Tabron v. United States*, D.C.App., 410 A.2d 209, 214 (1979); *Light v. United States, supra* at 480; *Day v. United States*, D.C.App., 360 A.2d 483, 485 (1976). This weighing process requires a careful and informed exercise of the trial judge's discretion separate from the initial *Drew* determinations. *Willcher v. United States, supra* at 76–77. *See generally Johnson v. United States*, D.C.App., 398 A.2d 354, 364–66 (1979) (standards governing review of trial court's exercise of discretion).

## III

Appellant complains of the admission of the following testimony of Miss Scholfield concerning prior acts committed by appellant: (1) his drinking habits and generally abusive behavior when intoxicated; (2) his practice of always carrying a gun; (3) an occasion on which he fired his gun into the air; (4) an occasion on which he fired a gun into a pillow near Miss Scholfield's head; (5) an occasion on which he slapped her. He contends that this testimony probed no issue other than his character and his propensity to have acted in conformity therewith on the morning in question. This is, of course, the very inference that the general rule of exclusion of other crimes evidence is designed to prohibit. The government, however, contends that this testimony was properly admitted for the limited purposes of showing appellant's intent, motive, identity, and the surrounding circumstances of the offense.[4]

---

3. Evidence of other crimes or wrongful behavior may be admissible where relevant to (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) identity. *Drew v. United States*, 118 U.S.App. D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964). District of Columbia practice is also generally consistent with Fed.R.Evid. 404(b).

4. Other crimes evidence is admissible, regardless of the *Drew* exceptions, when relevant to explain the circumstances surrounding the crime charged—if its probative value outweighs its prejudicial effect. *Tabron, supra* at 214. In this case, the prior crime evidence is not so closely related to the charged offense in terms of time or place to be necessary to com-

In the first place, the state of mind exceptions to the rule against admissibility of an accused's prior criminal conduct—intent, motive, absence of mistake—were not material issues in this case. Rather than raising a claim of accident, mistake or self-defense, which might have made appellant's state of mind a contested issue on which prior wrongful conduct evidence could be received, appellant denied having committed the acts. While intent to utter threatening words was a formal issue, in the sense that it was an element of the offense for which appellant was charged,[5] appellant's intentions were not a critical issue for the jury since appellant denied he uttered any words. Thus, these exceptions cannot be invoked. *United States v. Powell,* 587 F.2d 443, 448 (9th Cir. 1978), *appeal after remand,* 632 F.2d 754 (1980); *United States v. Silva,* 580 F.2d 144, 148 (5th Cir. 1978), *appeal after remand,* 611 F.2d 78 (1980); *United States v. Benedetto,* 571 F.2d 1246, 1249 (2nd Cir. 1978); *United States v. Fierson,* 419 F.2d 1020, 1023 (7th Cir. 1970).

 Furthermore, the evidence of appellant's prior wrongful conduct is not admissible under the identity exception to *Drew.* This exception allows the introduction of prior wrongful conduct evidence "if the evidence shows that the defendant has committed crimes so nearly identical in method that it is likely the present offense has been committed by him." *Bridges v. United States,* D.C.App., 381 A.2d 1073, 1075 (1977), *cert. denied,* 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978). *See also Evans v. United States,* D.C.App., 392 A.2d 1015, 1020–21 (1978). Evidence of prior crimes will be admissible where the distinctive facts relating to the manner in which

the prior crimes and the crime on trial were committed are nearly identical. *See Tinsley v. United States,* D.C.App., 368 A.2d 531 (1976). In this case, there is no concurrence of unusual and distinctive facts about the crime and the prior wrongful conduct which shows with reasonable probability that the same person that committed the previous acts also committed this crime against Miss Scholfield.

While the government argues that the evidence fits various *Drew* exceptions, their major contention is that, particularly as to the prior slapping and gun firing incidents, the contested evidence explains the prior relationship between the parties necessary to the jury's consideration of whether the "words uttered by appellant were of such a nature as to convey a menace or fear of serious bodily harm or injury to the ordinary hearer."[6] Even if we were not to limit admission of "other crimes" evidence to specific *Drew* exceptions, we cannot agree that the admission of such testimony has probative value on this issue outweighing its obvious potential prejudice. Evidence of prior wrongful behavior is always prejudicial to a defendant. It not only risks that the jury may infer guilt simply on the basis that the accused has committed wrongful acts, but it diverts the jury's attention from the question of defendant's responsibility for the crime charged to the improper issue of his bad character. On the other hand, the government's need for the evidence was minimal. The government was required merely to prove that the words used by the caller would have conveyed fear to the "ordinary" hearer. Moreover, other means of proof, especially the

---

plete the story of the crime on trial. The prior incidents described by Miss Scholfield took place at least seven months prior to the incident at issue in this case, since they all occurred prior to the termination of Miss Scholfield's and appellant's relationship in September 1979. The evidence of appellant's prior assault or threats against Miss Scholfield is not relevant to explain "immediate circumstances surrounding the offense charged." See *Green v. United States,* D.C.App., 440 A.2d 1005 (1982), and cases cited therein.

5. The essential elements of the offense of threats to do bodily harm are: that the defendant uttered words to another person; that the words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer; that the defendant intended to utter the words which constituted the threat. *Gurley v. United States,* D.C.App., 308 A.2d 785 (1973); Criminal Jury Instructions for the District of Columbia, No. 4.17 (3d ed. 1978).

6. *See* note 5.

fact that the reasonableness of Miss Scholfield's fear is better explained by the fact that bullets were fired through her front door just moments prior to her receiving the threatening call, limits the probative value of this evidence for this purpose. Miss Scholfield's challenged testimony was more probative of appellant's general criminal disposition. But, this is the very reason why it must be barred from the trial. To the extent that the trial court exercised its discretion to admit the testimony in order to explain the reasonableness of Miss Scholfield's fear, the trial court abused its discretion.[7]

### IV

In summary, the evidence relating to appellant's past wrongful behavior toward Miss Scholfield and his past behavior concerning alcohol and firearms, is not admissible under any *Drew* exception. Moreover, the evidence has little probative value in comparison to its prejudicial impact in regards to other material issues in the case. Thus, the admission of the evidence in the government's case in chief was error.

In determining whether the error requires reversal, *see Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), we reject the suggestion that appellant's testimony in the defense case, about the subject matter of the complainant's erroneously admitted testimony, rendered that error harmless. While it may have been proper to admit such testimony in the government's rebuttal case if appellant first introduced an explanation of his previous relationship with complainant, *see Tabron v. United States, supra* at 214;

*Willcher v. United States, supra* at 76–77; *Day v. United States, supra* at 485, see generally *Johnson v. United States, supra* at 364–66, that was not the situation here. We have no way of knowing that the defendant would have "opened the door" if the complainant had not been permitted to do so in the government's case in chief.[8] Because we cannot say that the jury "was not substantially swayed by the error," *Kotteakos v. United States, supra* at 765, 66 S.Ct. at 1248, the error was not harmless. We must reverse the conviction and remand the case for a new trial.

*Reversed.*

---

**7.** We should note that the government's proffer in this case failed to give the trial judge an adequate basis on which to balance the probative value and prejudicial effects of this "prior wrongful conduct" evidence as it related to the issue of Miss Scholfield's fear. At the bench conference held prior to trial, the government indicated only that it intended to introduce certain *Drew* evidence as to the issues of absence of mistake and the question of Campbell's past habits. Indeed, when the prosecutor mentioned the evidence in his closing statement and rebuttal, he indicated that the testimony

should be considered for the limited purpose of showing defendant's lack of mistake, motive, opportunity, and intent. The first mention of the admissibility of this evidence to prove the reasonableness of Miss Scholfield's fear is made on appeal.

**8.** Additionally, we have no way of knowing how the trial court would have exercised its discretion if defendant had, during his case in chief, testified about his prior relationship with complainant.