**Wallace R. BIGELOW, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 83-267.**

District of Columbia Court of Appeals.
Argued May 29, 1985.
Decided Sept. 4, 1985.

Thomas K. Clancy, Washington, D.C., appointed by the court, for appellant.

Bradley L. Kelly, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton and Alan D. Strasser, Washington, D.C., were on brief, for appellee.

Before NEWMAN, BELSON and ROGERS, Associate Judges.

BELSON, Associate Judge:

On appeal from his conviction of carrying a pistol without a license, D.C.Code § 22–3204 (1981), appellant assigns two errors: (1) the admission of evidence that appellant was carrying a considerable sum of cash when arrested; and (2) the application of the enhanced sentencing provision of D.C. Code § 22–104a (1981). Finding no error, we affirm.

I

In the afternoon of October 31, 1981, three plain-clothes officers of the Metropolitan Police Department—Glen Gilmore, Gary Lafferty, and Ricky Barrow—were on duty in a private, unmarked automobile. At around 3:40 p.m., as they were driving near the intersection of 11th and O Streets, N.W., Officer Gilmore saw appellant enter his automobile and drive away. The officers knew that appellant's driver's license had been suspended two weeks earlier. They followed appellant until he parked his car in the 400 block of M Street, N.W. The officers parked their vehicle behind appellant's, alighted, and approached his car. They observed two other persons in the car with appellant: a woman later identified as Gwendolyn Simmons was in the front passenger seat and a man named Hamilton sat in the right rear passenger seat.

Officer Gilmore, approaching from the rear of the passenger side, saw appellant bend down slightly and move his left arm toward the floorboard of the car. He could not see anything in appellant's hand, nor could he see the floorboard of the car. Officer Barrow, who approached from the rear of the driver's side, observed as appellant put his left hand in his coat pocket, then put it down between his legs to the floorboard, then bring it back up. Officer Lafferty also approached from the rear of the driver's side and was ahead of Officer Barrow. He saw a pistol in appellant's left hand, and watched appellant place it beneath the seat, between his legs. "He's got a gun," Lafferty shouted as he drew his service revolver. Lafferty then opened the driver's door and ordered appellant out of the car. As appellant emerged, Officer Barrow noticed the butt of a gun. Officer Lafferty retrieved a .38 caliber derringer-type pistol from the floorboard of appellant's car, underneath the driver's seat. It was loaded with two live rounds of ammu-

nition. Officer Barrow frisked appellant and recovered $1,024 in cash from his pockets.

Appellant was indicted on charges of one count each of carrying a pistol without a license, D.C.Code § 22–3204 (1981), possession of the implements of crime (narcotics paraphernalia), *id.* –3601, and possession of marijuana, D.C.Code § 33–541(d) (1984 Supp.). Subsequently, the government dismissed the possession of implements charge. On the day of trial, after voir dire and empanelling of the jury, appellant pleaded guilty to possession of marijuana.

Appellant did not testify at trial. Rather, he called two witnesses on his behalf, Michael Myrick and Tuwanna Blocker. Myrick testified that on the day of appellant's arrest he had seen a man and a woman at the corner of 11th and O Streets, N.W. The man had displayed a derringer, which Myrick described as being similar to the one ultimately recovered from appellant's car. Presently, appellant arrived in his car. The man entered the back seat, the woman the front seat, and appellant then drove away.

Tuwanna Blocker testified that she had operated appellant's car since his incarceration. According to Blocker, the front seat of the car was designed in such a way that a person could not slide an object underneath it.

The jury convicted appellant of carrying a pistol without a license. Appellant was sentenced to concurrent terms of imprisonment of 10 to 30 years on the pistol charge and 1 year on the marijuana charge. Appellant timely filed this appeal.

II

Appellant asserts error in the admission of evidence that he was carrying in his pockets $1024 in cash when arrested. The purpose of introducing the evidence was to show that appellant had a motive for possessing the gun, *viz.,* the desire to protect himself while carrying such a large sum of money. Appellant maintains that the evidence gave rise to an inference that he had committed other crimes, such as drug dealing. He contends it should have been excluded because it was irrelevant and unfairly prejudicial. We disagree.

The general rule in this jurisdiction, oft-stated and well-settled, is that evidence of other criminal acts which are independent of the crime charged is inadmissible where it tends to prove a criminal disposition on the part of the accused. *Jones v. United States,* 477 A.2d 231, 237 (D.C. 1984); *Campbell v. United States,* 450 A.2d 428, 430 (D.C.1982). Such evidence may be admissible, however, if relevant to (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) identity. *Drew v. United States,* 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964); *accord, Jones,* 477 A.2d at 237; *Wheeler v. United States,* 470 A.2d 761, 769 (D.C. 1983). The proscription against admissibility of evidence of prior criminal acts extends to acts that have not been formally adjudicated as crimes, *Wheeler,* 470 A.2d at 769; *Miles v. United States,* 374 A.2d 278, 282 (D.C.1977), but not to acts that are not, at least, "minimally in the nature of a criminal offense," *Wheeler,* 470 A.2d at 769; *see Jones,* 477 A.2d at 237 n. 13.

It is by no means certain that appellant's possession of a large sum of cash at the time of his arrest "in and of itself," *Wheeler,* 470 A.2d at 769, was sufficiently criminal in nature to trigger the rule of inadmissibility. *See, Hawkins v. United States,* 482 A.2d 1230, 1232 (D.C.1984) (holding that in prosecution for possession of a controlled substance, cocaine, possession of "cutting reagents" used to dilute cocaine and heroin was not other crimes evidence because possession of these substances is legal); *Wheeler,* 470 A.2d at 770 (behavior of appellant who "rang doorbells, peered into windows, wandered between houses and bushes, posed as a salesman and workman, followed one woman, and gave an alias to an inquisitive police officer ... albeit strange, is not sufficiently 'criminal' to fall within *Drew's* scope"); *Evans v.*

United States*, 417 A.2d 963, 966 (D.C. 1980) ("there is no compelling inference that the use of a credit card bearing another's name is a criminal act" constituting other crimes); *see also, Jones,* 477 A.2d at 237–38 (holding that evidence of appellant's prior gun possession was admissible in a homicide prosecution to show malice and intent; "[p]ossession of a gun, without more, is not wrongful conduct"); *Punch v. United States,* 377 A.2d 1353, 1358 (D.C. 1977) (on appeal of conviction of carrying pistol without license and possession of marijuana, holding—without *Drew* discussion—no error in admitting evidence of hats and stocking masks found in car with guns), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Appellant argues that the evidence of his possession of the cash ought not be viewed in isolation but rather in the context of surrounding circumstances. He stresses that he was observed and arrested in an area of the city reputed for illegal drug trafficking. He further notes that, because he pled guilty to the marijuana charge after the jury had been empanelled, the jury was aware he possessed drugs when arrested.

The trial court observed, however, that the jurors had not been questioned during voir dire about their knowledge of the reputation of the area where appellant had been arrested. The prosecution introduced no evidence in that regard. With respect to the fact that the jurors had been informed of the marijuana possession charge, the trial court noted that this had occurred only on voir dire prior to appellant's pleading guilty to this charge, and the jurors indicated they would not be prejudiced by the charge. The court instructed the jury not to consider the indictment as evidence. Moreover, the court expressly forbade the government to argue that appellant was a drug dealer. Upon review of the record, we find that the government abided by that ruling and limited its use of the evidence of money to ascribing to appellant a motive to carry a gun, *i.e.,* for his protection.[1]

Even if we were to assume that the evidence of appellant's possession of the cash constituted evidence of other crimes, we conclude it was properly admitted. The evidence was introduced to show appellant's motive for possessing a gun. Evidence of other crimes that is relevant to motive is admissible under *Drew,* 118 U.S. App.D.C. at 16, 331 F.2d at 90. *See Calaway v. United States,* 408 A.2d 1220, 1226–27 (D.C.1979); *Crisafi v. United States,* 383 A.2d 1, 5 (D.C.), *cert. denied,* 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 716 (1978); *Chambers v. United States,* 383 A.2d 343, 345 (D.C.1978). Such evidence may not be admitted, however, unless it is directed to "a genuine and material issue in the case" and is probative of that issue. *Campbell,* 450 A.2d at 430 (citing *Willcher v. United States,* 408 A.2d 67, 75 (D.C.1979)); *Miles,* 374 A.2d at 282; *see Light v. United States,* 360 A.2d 479, 480 (D.C.1976).

1. These facts readily distinguish the instant case from *United States v. Shelton,* 202 U.S.App.D.C. 54, 628 F.2d 54 (1980), on which appellant would rely. *Shelton* involved a prosecution for assault on a federal officer. The government had established on cross-examination of the defendant and his codefendant that both were unemployed, that the codefendant had been in an area widely recognized as a center of narcotics activity, and that the codefendant had a large sum of money in his possession when arrested. *Id.* at 56, 628 F.2d at 56. The government did not link that evidence to the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* at 56–57, 628 F.2d at 56–57. The U.S. Court of Appeals for the District of Columbia Circuit reversed the defendant's conviction. It found that the prosecutor had "by innuendo, ... painted a picture of [defendant and his codefendant] as seedy and sinister characters." *Id.* at 58, 628 F.2d at 58. The court concluded that the evidence was not merely an "insignificant part" of the government's case but rather "was part of a conscious effort to portray the defendant as an undesirable, a member of the drug underworld, and, thus, a person who was likely to be guilty of assault—or of something." *Id.* at 58, 628 F.2d at 58. In the case at bar, by contrast, the prosecutor introduced the evidence of appellant's possession of the money specifically to show his motive for carrying the weapon. The prosecutor did not use the evidence to demonstrate that appellant had a disposition to commit crime.

"Whether an issue has been raised for purposes of receiving other crimes evidence depends upon both the elements of the offense charged and the defense presented." *Willcher,* 408 A.2d at 75 (citations omitted); *see Crisafi,* 383 A.2d at 5 (holding other crimes evidence admissible to show motive where motive was put in issue by defense at trial).

In the instant case, appellant had attempted to show, through the testimony of Michael Myrick, that one of the other two occupants of appellant's car might have had the gun. Defense counsel underscored this point in closing argument. Thus, evidence of appellant's motive for having the gun was relevant to prove that appellant, and not the other persons in his car, possessed the pistol. Appellant's possession of a large sum of cash suggests he had a good reason to possess a gun: to protect himself and his money. We agree with the trial court's determination that the evidence was relevant and material.

Of course, other crimes evidence relevant to a *Drew* exception must be excluded if its prejudicial effect outweighs its probative value. *Jones,* 477 A.2d at 237; *Campbell,* 450 A.2d at 430; *Willcher,* 408 A.2d at 75. The balancing process is committed to the discretion of the trial court and this court may reverse only if that discretion has been abused. *Jones,* 477 A.2d at 237; *Campbell,* 450 A.2d at 430; *Willcher,* 408 A.2d at 75. Our review of the record reveals that the trial court considered the factors relevant to the determination of whether the probative value of the evidence outweighs its prejudicial effect. We are satisfied that the court properly exercised its discretion in admitting the evidence.

III

Appellant next challenges his sentence on the ground that the trial judge erred by sentencing him to a term of imprisonment of 10 to 30 years for carrying a pistol without a license, pursuant to the penalty enhancement provisions of D.C.Code §§ 22-104a and 22-3204 (1981).[2] Appellant relies on rules of statutory construction[3] and lenity[4] in contending that, because he

2. D.C.Code § 22-104a(a) provides that:

If: (1) Any person: (A) Is convicted in the District of Columbia of a felony; and (B) before the commission of such felony, was convicted of at least 2 felonies; and (2) the court is of the opinion that the history and character of such person and the nature and circumstances of his criminal conduct indicate that extended incarceration or lifetime supervision, or both, will best serve the public interest, the court may, in lieu of any sentence otherwise authorized for the felony referred to in clause (A) of clause (1) of this subsection, impose such greater sentence as it deems necessary, including imprisonment for the natural life of such person.

D.C.Code § 22-3204 provides that:

No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in § 22-3215 [up to a maximum fine of $1,000, or up to a maximum prison term of one year, or both], unless the violation occurs after he has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or in another jurisdiction, in which case he shall be sentenced to imprisonment for not more than 10 years.

3. "[A] more specific statute will be given precedence over a more general one, regardless of their temporal sequence." *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (citing *Preiser v. Rodriguez,* 411 U.S. 475, 489-90, 93 S.Ct. 1827, 1836-37, 36 L.Ed.2d 439 (1973)); *Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978); *Lagon v. United States,* 442 A.2d 166, 169 (D.C.1982); *Martin v. United States,* 283 A.2d 448, 450-51 (D.C.1971).

4. "'[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (quoting *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)) *quoted in Busic, supra* note 3, 446 U.S. at 406, 100 S.Ct. at 1753; *Simpson, supra,* note 3, 435 U.S. at 14, 98 S.Ct. at 913; *Henson v. United States,* 399 A.2d 16, 21 (D.C.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979).

was convicted of carrying a pistol without a license under § 22–3204, he was properly subject only to the enhancement provisions of that section—which prescribes a maximum sentence of 10 years—and not subject as well to the habitual offender enhancement provisions of § 22–104a. We disagree.

Pursuant to the procedures of D.C. Code § 23–111 (1981), the government filed before trial an information setting forth appellant's prior convictions: assault with intent to kill while armed and assault with a dangerous weapon, both on November 13, 1974; conspiracy to escape, on December 18, 1973; and felonious possession of a prohibited weapon, on November 30, 1972. Appellant admitted to these convictions before trial and again at his sentencing. The trial judge relied upon appellant's 1974 assault with intent to kill conviction in ruling that appellant's instant conviction of carrying a pistol without a license was a felony under § 22–3204. The court relied on appellant's 1972 weapons conviction and his 1973 conspiracy to escape conviction in sentencing appellant to a term of imprisonment of 10 to 30 years as a third time felon under § 22–104a.[5]

This court has pronounced that joint application of the habitual offender enhancement provisions of § 22–104a and the enhancement provisions of other specific felony statutes "is not precluded by the rules of statutory construction or the rule of lenity where the policies underlying the enhanced penalty provisions are different and where the enhancement provisions do not have the same precondition to applicability." *Lagon v. United States,* 442 A.2d 166, 169 (D.C.1982). Both conditions for joint application are satisfied in the case at bar.

First, the policies underlying the enhancement provisions of § 22–104a and § 22–3204 are different. As to the former, "the habitual offender statute provides sentence enhancement for offenders whose prior record of two prior felony convictions indicate[s] that they will not be deterred or rehabilitated within the terms of an ordinary sentence." *Lagon,* 442 A.2d at 168 (citing H.R.REP. NO. 907, 91st Cong., 2d Sess. 65–66, 228, *reprinted in* 1970 D.C. CODE LEGIS. & AD.NEWS 460–61, 559). With respect to § 22–3204, by contrast, "[t]he legislative debates and reports concerning [the District of Columbia Law Enforcement Act of 1953, Pub.L. No. 83–85, 67 Stat. 90 (1953), of which § 22–3204 was enacted as a part, Pub.L. No. 83–85 § 204(c), 67 Stat. 94] clearly indicate that Congress was seeking by that legislation, among other things, to enforce drastically its ban against carrying dangerous and prohibited weapons within the District of Columbia." *Martin v. United States,* 283 A.2d 448, 450 (D.C. 1971). In other words, § 22–104a provides for enhanced penalties in order to reduce recidivism of repeat offenders, a distinctly different purpose from § 22–3204, the enhancement provisions of which are designed to keep dangerous weapons out of the hands of persons previously convicted of a felony or of a misdemeanor weapons offense.

Second, the enhancement provisions may be jointly applied under *Lagon* because they do not have "the same precondition to applicability." The enhancement provision of § 22–3204 becomes applicable when a defendant convicted of carrying a concealed weapon has either at least one prior misdemeanor weapons conviction or a prior felony conviction. By contrast, § 22–104a is triggered whenever a defendant convicted of any felony offense is

5. In light of this record, this court's decision in *Henson v. United States,* 399 A.2d 16 (D.C.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979), is not applicable here. In *Henson* we held that "*in the same proceeding,* a single prior felony conviction may not be used to convert a conviction under § 22–3204 into a felony offense and to serve as one of the two prior felony convictions for enhanced sentencing under § 22–104a." *Id.* at 21 (emphasis in original) (footnote omitted). In the instant case, none of appellant's prior felony convictions was used to do "double duty." *See Lagon, supra* note 3, 442 A.2d at 168 n. 4.

shown to have two prior and separate felony convictions. Accordingly, appellant's sentence under the joint provisions of §§ 22–3204 and 22–104a was entirely proper.

We note as well how anamolous it would be if—as would obtain under appellant's construction of the Code—a defendant convicted of a third felony, but one not involving a weapon, could be exposed to life imprisonment, while a defendant convicted under § 22–3204, even if previously convicted of numerous prior felonies, could be exposed at most to 10 years in prison. "Such a result would subvert the legislative intent embodied in § 22–104a to punish recidivists more severely." *Lagon*, 442 A.2d at 169.

*Affirmed.*