Charles JEFFERSON, Appellant,

v.

UNITED STATES, Appellee.

No. 89–46.

District of Columbia Court of Appeals.

Argued Jan. 16, 1991.
Decided March 14, 1991.

---

Richard S. Greenlee, Public Defender Service, with whom James Klein, Public Defender Service, and Page Kennedy, Public Defender Service, were on the brief, for appellant.

Christopher J. Reese, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, BELSON, and TERRY, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of assault with intent to kill, D.C.Code §§ 22–2801, (1989), and of unauthorized use of a motor vehicle (UUV), *id.* § 22–3815. The trial court sentenced him to consecutive prison terms of twelve to thirty-six years and of twenty months to five years, respectively. This appeal is premised on the trial court's ruling that "other crimes" evidence was inadmissible in the government's case because the defense had not contested intent. Two questions are presented: whether the trial court erred in ruling that the government would be allowed to reopen its case to introduce "other crimes" evidence—even though both sides had rested—if defense counsel (1) argued, in closing, that the government had failed to prove specific intent to kill, or (2) requested a simple assault instruction (concededly appropriate on this record), permitting conviction of a lesser included offense without a finding of specific intent to kill. We conclude the trial court ruled correctly and thus we affirm the assault conviction (appellant does not contest his UUV conviction).

## I.

Appellant and Renee Melton were lovers for five years until August 1987, when appellant, at Melton's insistence, moved out

of Melton's apartment. On September 28, 1987, appellant met Melton at a Metro station and, depending on whose version is credited, either punched, strangled, threatened to cut her throat with a broken beer bottle, threatened to kill her, threatened to rape her, and raped her twice, or talked and had consensual sex with her off and on over a nine hour-period.[1] As Melton and appellant were sitting in the car after the second alleged rape, police officers approached the car. After noticing that Melton was hysterical, that her eyes were red and "almost popping out," and that she had a large laceration on her arm, the officers arrested appellant. At the police station, appellant said: "That's my woman, she wasn't raped, I got a right to do anything to her."

Before trial, the government attempted to introduce evidence in its case-in-chief that, before they broke up, appellant and Melton had argued loudly, that appellant had struck Melton, and that, after he had moved out of Melton's apartment, appellant threatened to kill Melton several times and sabotaged her car. The government also proffered several witnesses who would testify that appellant had told them he would kill Melton. The trial court refused, at that time, to allow the government to introduce any of this so-called Drew[2] (or "other crimes") evidence but did allow a general, sanitized version: that appellant and Melton had had loud arguments and that appellant repeatedly had called and bothered Melton. The trial court deferred decision on admitting the Drew evidence until completion of the defense case.

After the defense had rested without contesting intent, the trial court ruled that, because of the relevance of the Drew evidence to specific intent to kill—an element of the charged offense—the government would be allowed to reopen its case to introduce that evidence if defense counsel took one or more of the following actions: (1) argued to the jury, in closing, that the government had not proved appellant's specific intent to kill Melton, or (2) requested a lesser included offense instruction on simple assault.[3] The court reiterated that, if intent were not to be contested, the "prejudicial effect" of the Drew evidence "would outweigh the probative value." But the court indicated that the government would be unduly "prejudiced" if the defense were allowed to contest intent in closing while the government was foreclosed from using Drew evidence relevant to that issue. The trial court, however, said it would permit defense counsel to argue in general, without risking admission of the Drew evidence, that the government had not met its burden of proof for every element of the crimes. Wishing to keep the Drew evidence out of the case, appellant did not request the simple assault instruction and did not argue to the jury that the government had failed to prove intent to kill.

## II.

■ Appellant contends the trial court erred in ruling that, if he argued lack of specific intent to the jury, the government would be permitted to introduce the other crimes evidence in response. He argues, more specifically, that other crimes evidence is admissible to establish intent only if the defense "controverts the alleged specific intent in some meaningful way," *Murphy v. United States*, 572 A.2d 435, 438 (D.C.1990), and that a closing argument stressing the government's failure to prove an element of the crime does not "controvert" an issue in the manner that *Murphy* and related cases require.

■ We have often noted that because of its highly prejudicial implication of a disposition or propensity to commit crime,

---

1. Appellant contends that Melton lied on the stand to avoid further difficulties with child abuse authorities for leaving her children unattended for over nine hours. As support for his version, appellant points to Melton's prior convictions for assault and battery, child abuse, and theft.

2. *See Drew v. United States*, 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964).

3. The trial court also said that defense counsel would risk admission of Drew evidence if he argued, in closing, that Melton had had no reason to fear appellant. That ruling is not at issue on appeal.

*Drew* evidence is inadmissible unless the evidence is relevant under one or more well-recognized exceptions: motive, intent, identity, a common scheme or plan, or absence of mistake or accident. *See, e.g., Graves v. United States,* 515 A.2d 1136, 1139 (D.C.1986); *Campbell v. United States,* 450 A.2d 428, 430 & n. 3 (D.C.1982); *Drew v. United States,* 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964).[4] Moreover, even if the other crimes evidence fits an exception, the trial court may not allow it in evidence unless the court finds its probative value outweighs the prejudicial impact. *See, e.g., Campbell,* 450 A.2d at 430.

■ We also have announced a *per se* rule that the government may not introduce other crimes evidence under the intent exception

> unless intent is genuinely in issue, not merely in the sense that it is an element of the offense, but in the sense that it is genuinely controverted.... We ... hold that where intent is not controverted in any meaningful sense, evidence of other crimes to prove intent is so prejudicial *per se* that it is inadmissible as a matter of law.

*Thompson v. United States,* 546 A.2d 414, 422–23 (D.C.1988); *see Murphy,* 572 A.2d at 438.[5] We have explained that the defense may genuinely controvert intent not only by introducing direct evidence but also, for example, through "defendant's opening statement, relevant cross-examination, and the representations of defense counsel." *Landrum v. United States,* 559 A.2d 1323, 1328 (D.C.1989). But unless it becomes clear through the defendant's opening statement or otherwise that the defense expressly contests intent, the government may not introduce other crimes evidence bearing on intent during its case-in-chief. *See Landrum,* 559 A.2d at 1326–27; *Thompson,* 546 A.2d at 423; *Graves,* 515 A.2d at 1142. Indeed, the government may have to wait until the defense has rested before the trial court can determine whether the defense has sufficiently contested intent to justify introduction of other crimes evidence in rebuttal (provided probative value outweighs prejudicial impact). *See, e.g., Landrum,* 559 A.2d at 1327.

■ We have stressed that the trial court may not assume, merely from the nature of the charge or from the government's evidence, that a defendant will contest intent; the court may not permit the government to introduce *Drew* evidence in its case-in-chief based on unverified assumption. *See Murphy,* 572 A.2d at 438. Nor may the court force the defense to reveal its strategy in order to afford the government an opportunity to present other crimes evidence in its case-in-chief. *See id.* at 437. In sum, our "cases make clear that a defendant must do something which controverts the alleged specific intent in some meaningful way before the prosecution may introduce *Drew* evidence on the issue of intent." *Id.* at 438; *see Landrum,* 559 A.2d at 1326; *see also Pounds v. United States,* 529 A.2d 791, 795 n. 6 (D.C. 1987); *Ali v. United States,* 520 A.2d 306, 310 n. 4 (D.C.1987).

The government does not dispute the trial court's view that, as of the time the defense had rested, specific intent was not at issue. Appellant had not testified. Neither in counsel's opening statement or cross-examination of Melton or others, nor through direct evidence, defense proffers, or otherwise, had appellant expressly contested his intent to kill. The trial court, therefore, acted correctly in refusing to permit the government to introduce other crimes evidence before—or after—the defense rested.

### III.

■ Appellant insists that he would not have controverted specific intent in any

---

4. *Drew* itself said of the stated exceptions that "this list is not necessarily all-inclusive." 118 U.S.App.D.C. at 16 n. 10, 331 F.2d at 90 n. 10.

5. Over a decade ago we noted that something more is required for admission of other crimes evidence than its mere relevance to an element

of the crime. "Whether an issue has been raised for purposes of receiving other crimes evidence depends upon both the elements of the offense charged and the defense presented." *Willcher v. United States,* 408 A.2d 67, 75 (D.C. 1979) (citations omitted).

"meaningful way," *Murphy*, 572 A.2d at 438, merely by arguing, in closing, that the government had failed to prove that element of the crime. According to appellant's brief, "[t]he way that an issue is 'controverted' is through the introduction of evidence," whether it be direct evidence, or evidence elicited on cross-examination, or evidence previewed in opening statement. Appellant seeks to distinguish these methods of controverting specific intent from a closing argument that simply, though expressly, puts the government to its proof.

■ We do not see the distinction. A closing argument that tells the fact-finder not to find specific intent because the government has failed in its proof assuredly injects intent into the case in a "meaningful way." *Murphy*, 572 A.2d at 438. An argument expressly pointing to the failure of the government's evidence of intent can be as powerful a defense tactic as putting on affirmative evidence of lack of intent. If an opening statement that previews the evidence can meaningfully controvert intent—as our caselaw confirms and appellant concedes—we see no principled basis for saying that a closing argument that reviews the evidence does not also meaningfully raise the same issue. Were we to rule otherwise, we would permit the defense to "sandbag" or "ambush" the prosecution, *see Murphy*, 572 A.2d at 439 n. 8; *Thompson*, 546 A.2d at 424 n. 17; defense tactics would become a vehicle for keeping other crimes evidence out of the case even though relevant to an issue the defense itself highlighted just before the jury retired to deliberate.

■ Our *per se* rule forbidding submission of other crimes evidence as a matter of law "where intent is not controverted in any meaningful sense," *Murphy*, 572 A.2d at 438 (quoting *Thompson*, 546 A.2d at 423), is not intended to give the defense an advantage over the prosecution. It is intended to prevent the prosecution from taking unfair advantage of the defense by introducing *Drew* evidence—powerful evidence implying propensity to commit crime—on an issue the defense never intends to raise,[6] or by introducing such evidence before it is clear the defense intends to raise the issue to which that evidence is directed.[7]

We have pointed out that, as a matter of fairness, if a defendant defers contesting an issue, such as intent, until after the government has rested, the government is entitled to have the case reopened to put on other crimes evidence (if more probative than prejudicial) under a relevant *Drew* exception. *See Murphy*, 572 A.2d at 439 n. 8; *Thompson*, 546 A.2d at 424 n. 17; *Graves*, 515 A.2d at 1142. Accordingly, the trial court properly administered the proceedings by reminding defense counsel of this rule up front, after the defense had rested but before closing argument, so that counsel could decide whether to controvert specific intent in closing or instead continue to keep *Drew* evidence out of the case simply by arguing, in general, that the government must prove every element of the crime. Counsel chose the latter alternative—a fair trade-off, we believe, wholly in accord with the *Graves–Thompson–Murphy* line of cases.

## IV.

■ The court also properly denied a simple assault instruction, which the parties agree the evidence otherwise would have warranted. If the jurors had heard such a lesser included offense instruction, they would have heard the court telling them, in effect, that they might legitimately view the evidence as showing assault without a specific intent to kill. Such an instruction would have focused the jurors' attention on the intent issue; it would have been tantamount to saying that, on this

---

6. *See Thompson v. United States*, 546 A.2d 414, 422 (D.C.1988) (other crimes evidence bearing on intent to distribute PCP-laced marijuana erroneously admitted in government's case-in-chief where defendant denied possession without contesting intent).

7. *See Murphy v. United States*, 572 A.2d 435, 438 (D.C.1990) (other crimes evidence bearing on intent to distribute Dilaudid erroneously admitted in government's case-in-chief because defendant had not disclosed whether he would contest intent).

record, they could find insufficient evidence of specific intent—exactly the point defense counsel wanted to stress. The trial court accordingly did not err in denying the simple assault instruction unless appellant was willing to acknowledge specific intent would be at issue, thereby permitting admission of *Drew* evidence which the trial court had ruled would be more probative than prejudicial under the circumstances.

*Affirmed.*