NEWMAN, Senior Judge:
Carrell was convicted after a bench trial of simple assault[1] and attempted threats to do bodily harm.[2] He appeals the portion of the judgment relating to attempted threats to do bodily harm; he does not challenge his assault conviction.[3] He urges us to hold that the evidence was insufficient to support a finding that he intended to threaten the victim, Ringen-burg, a finding that he contends the trial judge never made, although required to do so. We affirm.
I.
On January 10, 2012, the tumultuous two-year relationship between Carrell and his girlfriend, Ringenburg, began its eventful conclusion.- According to Ringen-burg’s testimony, which the trial judge credited in its entirety, Carrell came to the residence they shared that evening in an intoxicated condition; an argument ensued. Carrell told Ringenburg that “I wish you would die” and that if she called any of her family or friends for help, he would kill them. Ultimately, this encounter ceased and none of these events are the subject of the charges in this case.
The argument began anew the following morning. Carrell grabbed Ringenburg with both his hands around her throat, in a choking position, and pushed her against the bedroom window. While doing so, Carrell yelled at her “I could kill you right now, I could fucking kill you.” Ringen-burg testified that this caused her to fear for her life. After releasing her and after a further bout of verbal jousting, Carrell again grabbed Ringenburg and pushed her to the floor. He pinned her to the floor and placed a hand over her nose and mouth, so that Ringenburg could not speak and had difficulty breathing. Ringenburg felt like she was suffocating. She was able to get free and called 911.
Carrell testified. He denied pushing Ringenburg down to the floor, covering her mouth with his hands, or telling her, “I could kill you, I could fucking kill you.” On cross-examination, he admitted during previous arguments with Ringenburg he had broken furniture, furnishings, fixtures, and memorabilia.
We now quote, in some detail, from the trial court’s findings.
Okay. The Court has before her two counts in this case the Government’s proceeded on. One is an assault. I’m reading from the instruction, attempt battery-the elements of which the Government would have to prove beyond a reasonable doubt that the Defendant with force or violence injured or attempted to injure the complaining witness.
Two: That he did so voluntarily, on purpose and not by mistake or accident.
Three: At the time he had the apparent ability to injure her. And, also, there appears to be a self defense claim the Government would have to prove beyond a reasonable doubt that he did not act in self defense.
*165 In terms of the second count, which is threats to do bodily harm the Government would have to prove that Mr. Carrell spoke words or otherwise communicated to the complaining witness words [that] would cause a person reasonably to believe that he or she would be seriously harmed if the event occurred and that he intended to utter the words which constituted the threat.
Later, the court continued its findings and conclusions.
... I still ... determined based upon ... crediting the testimony of the complaining witness in the — in its entirely] — that Mr. Carrell did with force or violence when he did choke her with both hands, press her throat, when he did push her down onto the rug in the living room with force or violence injured or attempted to injure the complaining witness, that he did so voluntarily, on purpose, and not by mistake or accident.
And that at the time he had the apparent ability to injure her, I dealt with the issue and find that the Government has proven each of those elements beyond a reasonable doubt and is proven beyond a reasonable doubt that there was no self defense viable in this case.
I also have concluded based on the testimony that Mr. Carrell did utter words to Ms. Ringenburg in his anger, that the words I’m focused on are the words “I could kill you, I could kill you. I could fucking kill you right now.” And in terms of that — that—those sets of words, taken in the context — because one has to ask what is a threat.
There are threats that are immediate. There are threats that are — that threaten, if you will, utter future harm or conditional harm but in my assessment of the case law here the Court of Appeals ha[s] noted that I’m not to look at those words [in] a vacuum, I’m to look at those words in terms of the circumstances surrounding the statements whether or not those words would cause a reasonable person to interpret them as a threat or not.
Jenkins v. United States, 902 A.2d 79, (D.C.2006); and Clark v. United States, 755 A.2d 1026 [ (D.C.2000) ]. From the context of facial expression, tone, infliction, posture, the way that the incident was described at the given timé and how it was described quite expressly and vividly by the complaining witness in great detail at the time that she was being choked.
So I do find and conclude that the three elements of that offense have also been proven beyond a reasonable doubt.
Again, I just want to make the record clear that I am not finding the term— the comment that Mr. Carrell conceded he made — I wish you were dead. I’m not finding that to be the threat that is — is charged here. I don’t think that was argued that way and that’s not the threat — the words that I’m focusing on that constituted the Government’s argument and constituted the threat in this case.
And so for the following reasons I find Mr. Carrell guilty beyond a reasonable doubt of both the simple assault and threats to do bodily harm.
II.
There is no merit to Carrell’s claim of evidentiary insufficiency. The evidence, as credited by the trial judge, is legally sufficient to establish each element of the offense beyond a reasonable doubt as those elements are enunciated in Campbell v. United States, 450 A.2d 428, 431 n. 5 (D.C.1982), and its progeny. Likewise if viewed under United States v. Baish, 460 A.2d 38, 42 (D.C.1983), and its progeny, as *166 Carrell contends we must, the evidence that the trial judge credited is legally sufficient to establish guilt beyond a reasonable doubt even if we must include as an element “that the defendant intended to utter the words as a threat.” As the trial judge found, Carrell spoke the words “I could kill you, I could kill you, I could fucking kill you right now” while he was choking Ringenburg with both hands around her neck (i.e., the assault for which Carrell stands convicted and which he does not challenge here). Taken in the context in which they were used, including the prior interactions between the participants, these words were sufficient to enable a reasonable trier of fact to conclude beyond a reasonable doubt that Carrell was guilty of threatening Ringenburg with bodily harm, under either formulation of the “intent” requirement.
III.
Carrell asserts that whether or not the evidence was sufficient to permit a finding that his words were uttered with the intent to threaten, his conviction must nevertheless be reversed because the trial judge did not make an explicit finding on this issue as he urges is required by such cases as United States v. Baish, supra, and its progeny, e.g., Clark v. United States, 755 A.2d 1026, 1030 (D.C.2000). To address this contention, we must analyze our decisions construing the elements of the offense of threats to do bodily harm.[4]
We first construed our threats statute in Postell v. United States, 282 A.2d 551 (D.C.1971). There we noted that the
crime of oral threats to do bodily harm was unknown to the common law and we know of no cases in this jurisdiction which have construed our statute or the meaning of the word “threats.” Accordingly, we must first interpret [the statute] in light of the facts in this case and the applicable principles of law as we understand them.
Id. at 553. After reviewing the authorities, we concluded that “the gist of the crime is that the words used are of such a nature as to convey a menace or fear of bodily harm to the ordinary hearer.” Id. (citing State v. Schultheis, 113 N.J.Super. 11, 272 A.2d 544, 547 (A.D.1971)). We have reaffirmed on numerous occasions Postell’s construction of the threats statute as encompassing all communications that are objectively viewed as threats by the “ordinary hearer.” E.g., Tolentino v. United States, 636 A.2d 433, 435 (D.C.1994); Beard v. United States, 535 A.2d 1373, 1378 (D.C.1988); United States v. Smith, 337 A.2d 499, 503 (D.C.1975); Gurley v. United States, 308 A.2d 785, 787 (D.C.1973).
*167 Our next visit to this issue was in Campbell v. United States, 450 A.2d 428 (D.C.1982). We held with respect to the elements of the offense:
The essential elements of the offense of threats to do bodily harm are: that the defendant uttered words to another person; that the words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer; that the defendant intended to utter the words which constituted the threat. Gurley v. United States, D.C.App., 808 A.2d 785 (1973); Criminal Jury Instruction for the District of Columbia, No. 4.17 (3d ed. 1978).
Id. at 431 n. 5.
Thus our jurisprudence on threats to do bodily harm remained until we decided United States v. Baish, 460 A.2d 38 (D.C.1983). There, after referring to Webster’s Third International Dictionary (1966) and Blacx’s Law Dictionary (1979) to define the term ‘threat,’ as a “communicated intent to inflict harm on any person or on property,” id. at 42, we opined:
Our several cases which construe § 22-507 recognize this principle. In Campbell v. United States, 450 A.2d 428 (D.C.1982), we enumerated the statutory elements. To establish a prima facie case, the government must prove, first, that the defendant uttered words to another, as well as that these words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer, and that the defendant intended to utter these words as a threat. Id. at 431 n. 5 (emphasis added) (citing Gurley v. United States, supra, and Criminal Jury Instructions for the District of Columbia, No. 4.17 (3d ed. 1978)).

Id.

Comparing this recitation of the elements of the offense with the recitation actually contained in Campbell, the authority on which Baish relies, it is apparent that Baish adds the language “and that the defendant intended to utter the words as a threat,” a ‘requirement’ nowhere found in Campbell. Compare id. (“... that the defendant intended to utter these words as a threat.” (emphasis added)), with Campbell, supra, 450 A.2d at 431 n. 5 (“... that the defendant intended to utter the words which constituted the threat.”). Noteworthy, the only cases cited by Baish on this issue were Gurley and Campbell. 460 A.2d at 42.
Clark v. United States, 755 A.2d 1026 (D.C.2000), came next. Citing Baish, it also included this ‘requirement.’ Id. at 1030 (“... that appellant intended to utter the words as a threat.”). The defendant in Clark contended, among other things, that the evidence was insufficient to establish the words he spoke to a police officer while under arrest constituted a threat to do bodily harm. In discussing this issue we said:
Words cannot always be read in the abstract and often acquire significant meaning from context, facial expression, tone, stress, posture, inflection, and like manifestations of the speaker and the factual circumstances of their delivery. See State v. Howe, 247 N.W.2d 647, 654 (N.D.1976) (“No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion. A threat often takes its meaning from the circumstances in which it is spoken and words that are innocuous in themselves may take on a sinister meaning in the context in which they are recited.”) (citation omitted). Whether a particular statement constitutes a threat is a question of fact for the jury. See United States v. Fulmer, 108 F.3d 1486, 1492 (1st Cir.1997) (“Whether a given [statement] consti *168 tutes a threat is an issue of fact for the trial jury. The use of ambiguous language does not preclude a statement from being a threat. While the statement on its face may be susceptible to more than one interpretation, some factors ... such as the tone of the defendant’s voice or the credibility of the government’s and [defendant’s] witnesses, may legitimately lead a rational jury to find that this statement was a threat”; citing cases) (internal quotation marks and citations omitted); United States v. Malik, 16 F.3d 45, 49 (2nd Cir.), cert. denied, 513 U.S. 968, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994); United States v. Schneider, 910 F.2d 1569, 1570 (7th Cir.1990).
Id. at 1031 (footnotes omitted).
We thus began to discuss the analysis a fact finder must undertake in seeking to determine whether the words that were spoken constituted a threat as distinguished from words that do not fall within the statutory prohibition. We elaborated more extensively on this in our most recent decision concerning threats to do bodily harm, In re S.W., 45 A.3d 151 (D.C.2012), an opinion about which we will say more anon.
After Clark, we decided Evans v. United States, 779 A.2d 891 (D.C.2001). There we cited to Campbell for the elements of the offense, id. at 894 (“... that the defendant intended to utter the words which constituted the threat.”), and to Baish for another proposition — that a threat is consummated only when communicated, id. Our subsequent decision in Joiner-Die v. United States, 899 A.2d 762, 764 (D.C.2006), cited to Evans and Campbell for the same elements and made no mention of Baish or its progeny. That decision, analyzing both the offenses of threats and intent-to-frighten assault, also states that intent-to-frighten assault, like threats to do bodily harm, requires only a general intent. Id. at 765.[5]
Next came Jenkins v. United States, 902 A.2d 79 (D.C.2006). There, the defendant claimed that her words were innocuous, neutral, and could not be found to constitute a threat to do bodily harm. Quoting the passage from Clark on contextual analysis we have quoted supra, we cited Baish and Clark for the proposition that the words uttered must have been intended by the defendant to constitute a threat. Id. at 86 (“... that appellant intended to utter the words as a threat.”).
In a footnote, we noted that the government’s brief argued that Baish and its progeny erred by including a ‘requirement’ that the defendant must have intended his words to be a threat, since that does not comport with prior decisions on this point such as Campbell and the cases on which we relied in Campbell. Id. at 87 n. 11 (arguing the earlier articulation of the elements in Campbell controls (citing Thomas v. United States, 731 A.2d 415, 420 n. 6 (D.C.1999))). We found no need to resolve *169 this contention at that time because, as we said, under either formulation a reasonable fact finder could find guilt beyond a reasonable doubt. Id.
Our most recent decision on this question is In re S.W., 45 A.3d 151 (D.C.2012). There, we were confronted with the issue of “whether words threatening on their face can be rendered benign by their context.” Id. at 155-56. Recognizing the First Amendment implications of a threats statute, we said:
Indeed, even when statements are threatening on their face, it is essential to consider and give full weight to context in order to ensure that the District’s threats statutes are applied within constitutional parameters. As the Supreme Court held in Watts v. United States, and this court acknowledge in Jenkins, “[A] statute ... which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech.” 394 U.S. at 707, 89 S.Ct. 1399. It is a cornerstone of our democracy that the First Amendment generally “bars the government from dictating what we see or read or speak or hear.” Ashcroft v. Free Speech Coal., 535 U.S. 234, 245, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). “True threats” are an exception to this rule and may be criminalized without violating the First Amendment. Virginia v. Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). But speech is only a “true threat” and therefore unprotected under the Constitution if an “ordinary reasonable recipient who is familiar with the[] context [of the statement] would interpret” it as a “serious expression of an intent to cause a present or future harm.”
[[Image here]]
In short, a determination of what a defendant actually said is just the beginning of a threats analysis. Even when words are threatening on their face, careful attention must be paid to the context in which those statements are made to determine if the words may be objectively perceived as threatening.
Id., at 156, 157 (footnotes omitted). We held that singing a version of a song by the hip-hop rapper LiT Wayne as a taunt to a neighbor, when taken in full context by an “ordinary hearer,” was not sufficient to cause that hearer a reasonable belief that the threatened harm would take place. Id. at 160.
In this case, as it did in Jenkins, the United States notes the difference between the formulation in the Campbell line of cases and the Baish line of cases. The United States urges that these lines of cases are in conflict and that our decisions in M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C.1971), and Thomas, supra, 731 A.2d at 420 n. 6, compel us to follow the Campbell formulation rather than that of Baish. To address this contention, we must first determine whether there is in reality legal difference between the two formulations.
Baish is indeed in conflict with Campbell and the authorities on which Campbell relies. In Campbell, the focus is upon the “ordinary hearer” in the full context in which the words are spoken, an objective test. In Baish, the focus is both upon the “ordinary hearer,” an objective test, and additionally upon whether “the defendant intended to utter the words as a threat,” a subjective test of specific intent.
As the United States Court of Appeals for the Sixth Circuit has said in construing a federal ‘threats’ statute, 18 U.S.C. *170 § 875(c)[6]:
The issue in the present case is whether the second element — “the communication containing a threat” — requires general intent or specific intent. If the statute contains a general intent requirement in regard to the threat element of the offense, the standard used to determine whether or not the communication contained an actual threat is an objective standard, i.e., would a reasonable person consider the statement to be a threat. If the statute contains a specific intent requirement, the standard is a subjective standard i.e., did the particular defendant have the subjective knowledge that his statement constituted a threat to injure and did he subjectively intend the statement to be a threat.
United States v. DeAndino, 958 F.2d 146, 148 (6th Cir.1992). That court concluded the federal statute “does not require specific intent in regard to the threat element of the offense, but only general intent.” Id. at 150. All other Circuit Courts, except the Ninth Circuit, that have examined the issue have held the same. See, e.g., United States v. Elonis, No. 12-3798, [730 F.3d 321, 331] 2013 WL 5273118, at *8 (3d Cir. Sept. 19, 2013); United States v. Nicklas, 713 F.3d 435, 440 (8th Cir.2013); United States v. White, 670 F.3d 498, 508 (4th Cir.2012); United States v. Stewart, 411 F.3d 825, 828 (7th Cir.2005); United States v. Morales, 272 F.3d 284, 287-88 (5th Cir.2001); United States v. Francis, 164 F.3d 120, 122 (2d Cir.1999); United States v. Whiffen, 121 F.3d 18, 21 (1st Cir.1997). But see United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir.2007).
The formulations in both the Posted, Gurley, Campbell line of cases and the Baish line of cases are seeking to ensure that only “true threats” within the constitutional limitations described in such cases as Doe v. Pulaski Cnty. Special Sch. Dist., 306 F.3d 616, 622 (8th Cir.2002), Alexander v. United States, 418 F.2d 1203, 1206 (D.C.Cir.1969), and In re S.W., supra, 45 A.3d at 156-57 — a determination made after a full contextual analysis — are held to be within the statutory prohibition. Specific intent, unless admitted by the defendant, must be proved by the same circumstantial evidence used to prove general intent in a full contextual analysis. See Massey v. United States, 320 A.2d 296, 299 (D.C.1974). In our view, either formulation is adequate to this task; there is no jurisprudential justification that both general and specific intent apply to the same ‘threats’ offense.
Our en banc holding in Holt v. United States, 565 A.2d 970 (D.C.1989), itself resolves the conflict between Campbell and Baish. Holt reaffirmed this court’s holding in United States v. Young, 376 A.2d 809, 814 (1977), that both our felony and misdemeanor threats statutes have identical elements and that the intent required is “general intent.” See 565 A.2d at 971, 972 (“The plain language of D.C.’s felony threats prohibition does not include any intent element.”). This clearly vitiates the contrary prior holding in Baish if not indeed overruling it, albeit sub silentio. Additionally, our holding in Thomas v. United States, supra, 731 A.2d at 420 n. 6, compels us to follow Young, Gurley, Postell, and Campbell, all of which preceded Baish, even if the issue had not been resolved by Holt alone.
*171 We do so and reiterate the elements of the offense as we did in Campbell.
that the defendant uttered the words to another person; that the words were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer; that the defendant intended to utter the words which constitute the threat.
Campbell, supra, 450 A.2d at 431 n. 5. Neither more nor less is required.
Finally we note that in a bench trial, the trial court is required to make specific findings when delivering its verdict only upon request of a party made prior to the verdict. Super. Ct.Crim. R. 23(c); Markowitz v. United States, 598 A.2d 398, 407 n. 9 (D.C.1991). Carrell made no such request. Additionally, after the trial judge made some specific findings, sua sponte, Carrell made no objection or request for additional findings. Thus, his claim of error here is subject to plain error review, at best. Tyson v. United States, 30 A.3d 804, 806-07 (D.C.2011) (“Even if we were to conclude that appellants entitlement to specific findings was not waived ... he must demonstrate plain error in order to prevail on appeal”). There being no error at all, perforce there is no plain error. See United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Affirmed.

. D.C.Code§ 22-404(2001).

. D.C.Code §§ 22-407 (threats), 22-1803 (attempt) (2001). The threats statute was amended in 2012 after the events here at issue, but the amendments have no substantive bearing on this case. See Criminal Fine Proportionality Amendment Act of 2012, sec. 203(b), § 22-407, 60 D.C.Reg.2064 (2012).

.We affirm this conviction without further discussion save as the extent to which the evidence of the assault relates to the attempted threats conviction.

. The District of Columbia has criminalized the offense of threats to do bodily harm as both a misdemeanor and as a felony. The .misdemeanor statute states:
Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than 6 months, or both, and, in addition thereto, or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding 1 year.
D.C.Code § 22-407 (2001) formerly D.C.Code § 22-507 (1981). The felony statute states:
Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part, shall be fined not more $5,000 or imprisoned not more than 20 years, or both.
D.C.Code § 22-1810 (2001) formerly D.C.Code § 22-2307 (1981). The elements for both are the same. In re S.W., 45 A.3d 151, 155 n. 9 (2012) (citing Baish, supra, 460 A.2d at 41, and United States v. Young, 376 A.2d 809 (D.C.1977)). Accordingly, in determining the elements of the offense of threat-ing bodily harm, we review our precedent regardless of whether the felony or misdemeanor statute was charged.

. The defendant in Joiner-Die was charged both with attempted threats to do bodily harm and intent to frighten assault; we held:
To establish intent-to-frighten assault, the government must prove: (1) that the defendant committed a threatening act that reasonably would create in another person a fear of immediate injury; (2) that, when he/she committed the act, the defendant had the apparent present ability to injure that person; and (3) that the defendant committed the act voluntarily, on purpose, and not by accident or mistake. D.C.Code § 22-404; see also Frye v. United States, [926 A.2d 1085, 1100 n. 9 (D.C.2005)].
899 A.2d at 765. Accord Smith v. United States, 593 A.2d 205, 206-07 (D.C.1991) ("Therefore, we hold that the offense of assault, whether the ‘attempted-battery’ type or the 'intent-to-frighten' type, remains a general intent crime which may be proved by a showing that a defendant intended to do the acts which constitute the assault.”).

. "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.” 18 U.S.C. § 875(c) (2012).